HARRY ZINBERG *v.* UNITED STATES (No. 2928[1])

United States Court of Customs Appeals, June 11, 1928

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellant. *Charles D. Lawrence,* Assistant Attorney General (*James R. Ryan,* special attorney, of counsel), for the United States.

[Oral argument December 7, 1927, by Mr. Richardson and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

---

[1] T. D. 42870.

Certain rosaries were imported at the port of New York. The invoice price was $1.45 per dozen. They were entered at $1.60 per dozen and appraised at $1.80 per dozen. An appeal was taken by importer to reappraisement. They were reappraised by Sullivan, Justice, at the entered value—$1.60 per dozen (reappraisement No. 38283–A). While this appeal was pending importer imported similar merchandise at the port of New York. The invoice price of one shipment was $1.45 per dozen. The invoice price of a later shipment was $1.60 per dozen. Before making entries of the merchandise covered by these shipments importer submitted the invoices therefor to the local appraiser and requested information as to the dutiable value of the merchandise covered thereby. He was informed by the appraiser that the dutiable value of the rosaries in each shipment was $1.95 per dozen. Thereupon the importer made entries at $1.95 per dozen; and, in each entry, certified that the entered value was higher than the dutiable value.and that the merchandise was so entered *in order to meet advances by the appraiser in a similar case* then pending on appeal for reappraisement. The pending appeal referred to was reappraisement No. 38283–A.

Appeals were taken by importer to reappraisement. In each appeal the merchandise was reappraised at $1.60 per dozen. No appeals were taken in any of the cases from the judgments entered by the associate justice sitting in reappraisement.

The merchandise covered by the alleged "duress" entries was assessed for duty by the collector at $1.95 per dozen, the values stated in the entries, rather than at $1.60 per dozen, the final appraised values.

The importer claimed in his protest that duties should have been assessed "on the basis of the final appraised value." The court below overruled the protest and importer appealed.

The contention of counsel for importer seems to be summed up by this statement contained in his brief:

> The plain intent of the statute is that when an importer has imported a certain type of merchandise, as to which he makes a claim as to its value, which is lower than the appraised value, and thereafter imports the same merchandise which he *claims to be of the same value, basing his entry on his appeal in the initial case,* if his contention as to the value in the "pending case" be finally sustained by the courts, duty shall be assessed on the "value returned by the appraiser, general appraiser, or Board of General Appraisers, as the case may be." Sec. 503. (Italics ours.)

When this statement of the construction of section 489 (hereinafter quoted) is applied to the case at issue, it is at once evident that, by the language "basing his entry on his appeal in the initial case," counsel does not intend to so construe the section as to confine the issues in "duress" entries to the issues in the pending case. In

his statement of the case in the court below counsel for importer said:

Mr. RICHARDSON. These two cases are protests against the refusal of the collector to liquidate duress entries upon the final appraised value, the situation being that of an unusual case. The importer entered the merchandise at $1.60; the appraiser raised it to $1.80. There was a new entry made in which the importer entered at $1.95 to meet that advance made by the appraiser, and also made other advances.

Judge WAITE. I thought the appraiser advanced it to $1.80?

Mr. RICHARDSON. That is correct. In the meantime the market value of the merchandise had gone up and on advice given to the importer by the appraiser he entered at $1.95 instead of $1.80. The collector's letter does not correctly represent the facts in this case. For that reason I would like the broker to take the stand and prove what he actually did in making the entry in these two cases, and then submit the records in the reappraisement cases and then ask Mr. Trupper a few questions, so he can go. I will take him a little bit out of the order.

Judge YOUNG. Your position is he is in the same situation as though he had entered at $1.80?

Mr. RICHARDSON. Yes; so far as this case is concerned.

Judge YOUNG. He entered at $1.95 to meet the advance of the appraiser as to what it was going to be the next time?

Mr. RICHARDSON. Yes; that is the exact situation. The collector in all our cases has refused in any event to allow a liquidation or a refund in duress entries where the value at which merchandise is entered varies in even the slightest degree from that under which the duress entry is entered. He is contending it has got to be not only the same merchandise, appraised at the same price but entered at the same price; that if merchandise arriving a month apart on which under natural conditions the market has gone up, according to the interpretation, the absurd interpretation that the collector has placed upon that law, there can not be a duress entry under those circumstances. That is the situation here.

     \*     \*     \*     \*     \*     \*     \*

Mr. RICHARDSON. \* \* \* The original case I think the invoice was $1.45, but through further information we raised our entered value to $1.60. This first case was advanced to $1.80. The other cases were entered to meet the advance of $1.95, and our claimed market value in both those cases was $1.60.

     \*     \*     \*     \*     \*     \*     \*

The evidence in the case fully supports the statements of counsel. Accordingly, in the consideration of this case, we are confronted at the outset with the proposition, plainly and unequivocally stated by counsel and the witness for the importer, that the alleged "duress" entries were not made for the purpose of meeting, equaling, or opposing the advance in value made by the appraiser in the initial case then pending on appeal for reappraisement, but were in fact made to meet such advance, and, in addition thereto, to meet the *opinion* of the appraiser, expressed in advance of entry and appraisement at the request of importer, as to the dutiable value of the merchandise covered by the "duress" entries. In other words, it has been frankly admitted that it was not for the purpose of meeting the advance in value made by the appraiser in the pending case, but to meet anticipated appraisements at values higher than those returned in the pending case. The purpose of the importer having been plainly and

frankly stated, it remains to be seen whether such proceedings are authorized by law. This brings us to a consideration of the provisions of section 489 of the Tariff Act of 1922. They read as follows:

SEC. 489. * * * Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement.

The manifest purpose of the Congress in enacting the additional duties provisions in section 489, and in providing that "duties shall not, however, be assessed upon an amount less than the entered value," was to require importers to *ascertain* the dutiable value of imported merchandise, *and* to *enter* it at such value. Were it not for these provisions the entire burden of ascertaining the dutiable value of imported merchandise would fall upon the officials of the Government.

The only exception to the provision that duties shall not be assessed upon an amount less than the entered value is in a case where the "importer certifies at the time of entry that the entered value is higher than" the dutiable value, "and that the goods are *so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement.*" (Italics ours.) But this is not all that is required of the importer. Before he is entitled to any relief under these provisions the *contention of the importer in the pending case or cases* must be sustained, wholly or in part, by a final decision of the court on appeal or review. More than that, it must appear that the "action of the importer on entry *was so taken in good faith, after due diligence and inquiry on his part.*" (Italics ours.)

What was the contention of the importer on his appeal to reappraisement "in the pending case"? Was it not that the appraisement of the rosaries at $1.80 per dozen was wrong and that their dutiable value was less? If his contentions in the pending case be sustained the "collector shall liquidate the [duress] entries in accordance with the final appraisement" of the merchandise covered by them. Is it not perfectly clear that the action of an importer in a "duress" entry must be based upon the contentions of the importer in the pending case? If so, how can it be argued with reason that an importer may use the pending case as an excuse rather than as the basis of his action in "duress" entries? Surely it was not within the contemplation of the Congress that an importer might file a

"duress" entry for merchandise believed by him to be of a value higher than the appraised value of the merchandise in the pending case. If an importer may lawfully do this, the statutory provisions that "duties shall not, however, be assessed úpon an amount less than the entered value," could always be avoided, regardless of the value of the merchandise covered by "duress" entries, when similar merchandise is involved in a case pending on appeal for reappraisement. This argument seems to be impossible of refutation, when it is considered that the action of an importer on "duress" entries must be taken in "good faith, after due diligence and inquiry on his part." Concerning what must he inquire? Is it not plain that the "inquiry" and "due diligence" on his part relate to the dutiable value of the merchandise covered by the "duress" entries? But why should the Congress be concerned about "due diligence," "inquiry," and "good faith" on the part of the importer? Surely, it must have had in mind that "duress" entries should cover only such merchandise as was comparable in value to that involved in the "cases then pending on appeal"; and that the issues raised by the certificate in the "duress" entries would be the same as those in the pending cases. If this is true, then, of course, it was not within the contemplation of the Congress that merchandise of a higher value—due to an advancing market—and, therefore, of a different status than that involved in "pending cases," could be brought within the "duress" entry provisions of the statute. Nor is the principle involved in any way altered by the fact that upon final appraisement the merchandise covered by the "duress" entries may be held to be of the same value as that involved in the pending case.

The issue presented by the appeal to reappraisement in the "pending case" was whether the merchandise was dutiable at $1.80 per dozen or less. If similar merchandise is entered at $1.95 per dozen, is it not a fair deduction that the importer thought that it might be of that value, even though he certified that it was worth only $1.60 per dozen? Can it be argued that the entries at $1.95 per dozen, admittedly entered at that value to *meet* the suggestions of the appraiser, were made to *meet* the advance in value from $1.60 to $1.80 per dozen in the case pending on appeal?

The issue raised by the involved "duress" entries is this: Is the merchandise dutiable at $1.95 per dozen, as claimed by the appraiser *prior to entry and appraisement*, or is it dutiable at $1.60 per dozen as claimed by the importer? Assume, for illustration, that the final appraisement of the merchandise in the pending case is $1.79 per dozen—the importer's contention being partly sustained—and that the merchandise in the "duress" entries is finally appraised at $1.92 per dozen, can it be argued that the collector is required to assess duty on such merchandise at $1.92 per dozen, rather than on the

value at which it was entered—$1.95 per dozen? It must be remembered that the *statute requires the collector to liquidate the "duress" entries at the appraised value of the merchandise covered thereby, if the importer's contentions in the cases pending on appeal have been sustained, wholly or in part.* If this question is answered in the affirmative, then, of course, the contention of importer is correct. If, however, it must be answered in the negative, which we think is inevitable, the contention of importer is wrong.

We are confirmed in this conclusion by the definition of the verb "meet." It is defined as follows:

Meet, v. 1. To come to (a person or thing moving toward the same point from an opposite or different direction); as, to *meet* a stranger on the road. 2. To come to and touch or unite with; become contiguous to or joined with; as, the Ohio and the Mississippi *meet* at Cairo, Ill. 3. To be, act, or take place in conformity with; be suitable to; come up to; as, you have *met* my wishes in all things. 4. To discharge by paying; satisfy, as an expectation or desire; as, the bank has *met* all demands. 5. To come to and oppose; encounter; collide with; as, when Greek *meets* Greek, then comes the tug of war   *   *   *.

We are of opinion that the Congress by the language "and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement," intended to require an importer to meet the issue in the pending case, and that in order so to do he must enter merchandise in "duress" entries at the appraised value of the merchandise in the pending case.

This conclusion is supported, we think, by two other propositions of law, to which attention will now be directed. The Treasury Department has construed identical provisions contained in Paragraph I, section 3, of the Tariff Act of 1913. In T. D. 36221 the department held:

The statute invoked is found in Paragraph I of section 3 of the Tariff Act of 1913. As the said Act passed the House of Representatives this provision read, as it had in the Acts of 1897 and 1909:

The duty shall not, however, be assessed in any case upon an amount less than the entered value.

As the bill passed the Senate it was made to read as follows:

The duty shall not, however, be assessed in any amount less than the entered value unless by direction of the Secretary of the Treasury after consideration of the particular case. The Secretary of the Treasury shall accompany his direction with a statement of his conclusions and the reasons for it.

In conference this language was changed to read as follows:

The duty shall not, however, be assessed in any case upon an amount less than the entered value unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer

on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his direction with a statement of his conclusions and his reasons therefor.

Under our tariff laws importers are presumed to know the market value of merchandise imported by them and must enter their merchandise at such value under penalty of the payment of the additional duties imposed by law for failure so to do. It is not the purpose of this statute to relieve importers of that liability. It is its purpose to give to importers the benefit of their success in contested reappraisement cases in which there is a clearly defined issue between them and the appraiser, and the position of the importer is fully sustained upon the final decision in those cases in which the advance is made on entry in good faith and after due diligence and inquiry on their part—that is to say, after such investigation as shall afford good reason to believe, and shall cause them to believe, that the value contended by them to be the value of the merchandise is, in fact, the actual market value thereof.

In order to grant relief in the case here presented, the statute must be construed as if it read as it appeared in the bill as it passed the Senate, which would render nugatory the amendment made while the bill was in conference. All it would be necessary for any importer to do to circumvent the law would be to insure that a reappraisement should be always pending covering his line of merchandise. He could then make entry at the highest value that anyone had ever suggested for such merchandise, and thus avoid any possibility of the payment of additional duty and at the same time not be bound by the entered value. This would be equivalent to allowing entry by appraisement order on all lines of merchandise·upon which a reappraisement was pending at the time entry was made, and the whole theory of the customs administrative laws relating to the entry of merchandise would fall.

In order to secure the benefit of the statute cited the importer must make a definite contention at the time of entry, which must be sustained upon final reappraisement. The advances must be made to meet advances made by the appraiser in cases then pending—that is, they must be equal to the value returned by the appraiser in such cases. In addition thereto he must show that such advances were made by him in "good faith after due diligence and inquiry on his part."

We are in accord with the department's construction of the language "and that the goods are so entered in order to *meet* advances by the appraiser in similar cases then pending on appeal for reappraisement" contained in Paragraph I, section 3, of the Act of 1913. (Italics ours.) It has never, to our knowledge, been otherwise construed. This was known to the Congress at the time of the enactment of the Tariff Act of 1922. We must presume, therefore, that, by the use of identical language in section 489, the Congress intended to ratify this construction. No authorities need be cited in support of this proposition.

It will be observed that the provisions in section 489 in question here do not impose duties, charges, or exactions upon importers, but must be construed as a governmental grant of a privilege. Where a privilege is granted by the Government, any doubt in the interpretation or construction of the statute shall be resolved in favor of the Government. *Swan & Finch Co* v. *United States*, 190 U. S. 143, 146; *Hannibal etc., R. R.* v. *Packet Co.*, 125 U. S. 260, 271.

In the *Swan* case the "drawback" provisions of the Tariff Act of 1897 were under consideration. The court said:

Fourth. Being a governmental grant of a privilege or benefit it is to be construed in favor of the Government and against the party claiming the grant. Where the burden is placed upon a citizen, if there be a doubt as to the extent of the burden it is resolved in favor of the citizen, but where a privilege is granted any doubt is resolved in favor of the Government. In *Hartranft v. Wiegmann*, 121 U. S. 609, 616 the one rule was thus stated:

We are of opinion that the decision of the Circuit Court was correct. But, if the question were one of doubt, the doubt would be resolved in favor of the importer, "as duties are never imposed on the citizen upon vague or doubtful interpretations." *Powers* v. *Barney*, 5 Blatch. 202; *United States* v. *Isham*, 17 *Wall.* 496, 504; *Gurr* v. *Scudds*, 11 Exch. 190, 191; *Adams* v. *Bancroft*, 3 Sumner, 384. See also *American Net & Twine Co.* v. *Worthington*, 141 U. S. 468, 474.

On the other hand, in *Hannibal &c. Railroad Co.* v. *Packet Co.*, 125 U. S. 260, 271, we said, citing several authorities:

But if there be any doubt as to the proper construction of this statute,    *   *   * then that construction must be adopted which is most advantageous to the interests of the Government. The statute being a grant of a privilege, must be construed most strongly in favor of the grantor.

In the Hannibal case the court said:

But if there be any doubt as to the proper construction of this statute (and we think there is none), then that construction must be adopted which is most advantageous to the interests of the Government. The statute being a grant of a privilege, must be construed most strongly in favor of the grantor. *Gildart* v. *Gladstone*, 12 East, 668, 675; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 544; *Dubuque and Pacific Railroad* v. *Litchfield*, 23 How. 66; *The Binghampton Bridge*, 3 Wall. 51, 75; *Rice* v. *Railroad Co.*, 1 Black, 358, 380; *Leavenworth, Lawrence and Galveston Railroad* v. *United States*, 92 U. S. 733; *Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659.

Accordingly, if there be any doubt about the construction to be placed upon the provisions in question, it must be resolved in favor of the Government and not in favor of the importer.

Even though this opinion may be open to the criticism of repetition, nevertheless we again call attention to the obvious purpose of the Congress to require importers, as hereinbefore stated, "to *ascertain* the dutiable value of imported merchandise, *and* to *enter* it at such value." Furthermore, in construing the "good faith" provisions of section 489, pertaining to remission of additional duties, this court, in the case of *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, after referring to other decisions of the court upon the subject, said:

*   *   * Summarized, these adjudged cases announce certain fundamental facts which the petitioner must establish if he is to obtain relief: First, he must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he had made to the collector in making his entry, a full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

We are at a loss to understand how an importer can be injured by a construction of the provisions under consideration which, in effect,

requires him to ascertain the value of his merchandise; and, if he desires to take advantage of the privilege extended to him therein to so make his "duress" entries as to fairly and honestly meet the issues in the "pending case." He must be familiar with those issues, or he would be unable to make the certificate required by law. Surely, he ought not to be held to the measure of proof required in remission cases, if the "good faith" provisions under consideration are to be ignored.

An importer may either accept or reject requested advice as to values given by an appraiser. However, he is demanding too much when he insists upon the right to do both.

For the reasons stated the judgment is *affirmed*.

DISSENTING OPINION

SMITH, Judge: Rosaries imported at the port of New York, invoiced at $1.45 per dozen, were, by entry No. 743028, entered by the importer at $1.60 per dozen. The local appraiser at the port of New York appraised the merchandise at $1.80 per dozen, but upon appeal to reappraisement Justice Sullivan, then general appraiser, sustained the entered value as the market value of the importation on the date of shipment. While the appeal to reappraisement in that case was still pending similar merchandise was shipped on August 15, 1924, and on September 12, 1924. The shipment of August 15, 1924, was made 10 days after the initial shipment and was invoiced at $1.45 per dozen. The shipment of September 12, 1924, was invoiced at $1.60 per dozen. The importer, before making entry of the shipments of August 15, 1924, and September 12, 1924, submitted the invoices to the local appraiser and was informed by that official that the rosaries in both shipments would be appraised at $1.95 per dozen. The importer thereupon entered said last-named shipments at $1.95 per dozen and certified *that that entered value of the merchandise was higher than the foreign market value* and that the goods were entered at that value in order to meet advances by the appraiser in similar cases then pending on appeal to reappraisement and particularly the advances made by the appraiser in the first of the shipments, which was entered at $1.60 per dozen and advanced by the appraiser to $1.80 per dozen.

Notwithstanding that $1.60 per dozen, the entered value of the first shipment, appraised at $1.80 per dozen, was sustained on appeal to reappraisement, the entries of the two subsequent shipments were liquidated by the collector at $1.95 per dozen as the entered value of the merchandise. That liquidation was apparently made after receipt of a letter from the Treasury Department, in which the collector was informed that the department had long construed the phrase "to meet advances by the appraiser in similar cases" as meaning

that the advances must *"be equal* to the value returned by the appraiser in such cases." (Italics not quoted.)

Paragraph I, section 3, of the Act of 1913 provided that—

\* \* \* The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the *Secretary of the Treasury* in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor. (Italics not quoted.)

Under that provision, unless otherwise ordered by the Secretary of the Treasury, the collector of customs was bound to assess duty on the entered value although such value was higher than the appraised value, and it was held in *Mills & Gibb* v. *United States,* 8 Ct. Cust. Appls. 31, 37, T. D. 37164, that the refusal of the Secretary of the Treasury to direct that duty be taken on less than the entered value was final and could not be reviewed by the courts. In that case the entered value was advanced 20 per centum by the local appraiser. On reappraisement, however, only a 5 per centum advance was sustained, and from that reappraisement no appeal was taken. The importer requested the Secretary of the Treasury in writing to direct that the entry be liquidated on the basis of the 5 per centum advance and that application was denied on the ground that the importer should have entered his goods at the *exact* value found on reappraisement in similar cases and that not having entered his goods at a 5 per centum advance, duty would have to be paid on the entered 20 per centum advance.

The hereinbefore quoted part of Paragraph I of section 3 of the Act of 1913 was amended by section 489 of the Act of 1922 so as to read as follows:

\* \* \* Duties shall not, however, be assessed upon an amount less than the entered value, *except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final* decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement.

In this case the importer, as required by section 489, certified at the time of entry that the entered value was higher than the foreign market value and that his goods were so entered in order to meet

advances by the appraiser in similar cases then pending on appeal to reappraisement, particularly entry No. 743028. More than that, his certificate specifically contends that duty should be assessed on the basis of $1.60 per dozen, and that contention was *wholly* sustained on final appraisement of entry No. 743028. Was his action in making that certificate in good faith after due diligence and inquiry on his part? If it was, then he fully complied with the hereinbefore quoted provision of section 489 and is entitled to the relief therein provided. The importer's entry and certificate were made promptly and his good faith in making them can hardly be questioned in view of the fact that they expressly stated that the true foreign market value of his goods was $1.60 per dozen and his contention in that behalf was wholly sustained on final appraisement. The fact that he entered his goods at $1.95 per dozen, which was 15 cents higher than the appraised value of the first shipment, on account of information derived from the local appraiser must be regarded as further evidence of his good faith and honesty of purpose.

If the entry of goods at a higher value than that at which they have been appraised in similar cases can not be accepted as *meeting* the advances in such cases, neither can an entry which is appraised at less than the original advances in prior pending cases be so regarded. It would, therefore, follow that an importer in order to secure the advantages of section 489 must in entries subsequent to pending reappraisement cases, enter his goods at the *exact* value found on final appraisement. Such a construction as that of section 489 would simply mean that importers under that section are in no better case than they were under Paragraph I of section 3 of the Act of 1913 and that the amendment of it by section 489 accomplished nothing.

The verb " to meet " in section 489 does mean to be in conformity with, to come up to, but it also means to come to and oppose, to encounter, to answer with good or strong arguments, to *refute*. See the transitive verb "to meet," New Standard Dictionary and Century Dictionary. Whether the phrase "to meet advances" used in section 489 means to conform to, to be equal to, or to overcome or refute advances, is necessarily a question of construction. In determining the meaning of statutory words of doubtful signification, it is the duty of the courts to accept as expressing the legislative intent that meaning which will work justice rather than injustice.

\* \* \* All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. *United States* v. *Kirby*, 74 U. S. 482, 486.

That part of section 489 which is involved in this appeal is a remedial statute and was designed by Congress to relieve importers from serious wrongs to which prior legislation had subjected them. Statutes of that kind are to be liberally construed in order that the

purpose of such legislation may be accomplished. *Klein, Messner Co.* v. *United States,* 13 Ct. Cust. Appls. 273, 276, T. D. 41212; *Cliquot's Champagne,* 3 Wall. 114, 145; *Beley* v. *Naphtaly,* 169 U. S. 353, 359, 360.

Even if there were doubt as to the meaning of the word "meet" as used in section 489, the benefit of that doubt should be given to the importer. *Hartranft* v. *Wiegmann,* 121 U. S. 609, 616.

Importers are not bound by the entered value made under section 489, and entries made in accordance with its provisions are expressly excepted from the statutory requirement that duty shall not be assessed on less than the entered value.

The prevailing opinion argues that the evidence in the case and the admissions of counsel for the importer establish that the duress entry was not designed to meet the advances in value made by the appraiser in the pending cases but to meet anticipated appraisements at higher values. It is said that the importer's entry and certificate were not made to meet advances on similar goods previously appraised but for a purpose not authorized by the statute and that if that procedure be countenanced it would result in relieving the importer of the obligation of entering his merchandise at its proper dutiable value.

I can not agree that either proposition is sound. Under the statute, as I read it, the importer has the right to meet not only advances on importations made by himself but advances on importations of similar merchandise made by others. The importer was informed by the appraiser that the goods had advanced in value from $1.80 to $1.95, and for all that the importer knew the appraiser was then appraising such merchandise at $1.95. The importer, therefore, had a right to enter his goods at the new value announced by the appraiser and to certify that such value was higher than the true dutiable value of the importation. To hold otherwise would bar the importer from making the certificate as to any importations other than those made by himself and deprive him of the right to meet advances made on merchandise previously imported by others and similar to his own.

Let us now consider whether the duress entry of $1.95 per dozen relieved the importer of the obligation of entering his merchandise at its proper value. The answer to that is the statute itself which gave to him the absolute right to meet advances in similar cases and if he had a right to make a duress entry of $1.80 because of advances made on goods imported by himself, he had the right to make the duress entry of $1.95 which he was justified in assuming might be the advances made by the appraiser on similar importations by others. The duress entry value of $1.95 could no more result in loss of duty to the Government than could the duress entry of $1.80 for the simple reason that the goods covered by the duress entry of $1.95

had to be and were appraised. They were appraised at $1.95 and duty would have been taken by the Government on that value if there had been no appeal to reappraisement. An appeal, however, was taken to reappraisement, which resulted in sustaining the invoice value and the importer's contention.

The majority opinion recognizes that the phrase "to meet advances" did not require the importer to enter at a duress value *exactly equal* to the appraised value finally found in the pending case. Why, then, should the phrase be given a different meaning when the importer in a subsequent case entered his goods at a duress value of $1.95, after receiving information from the appraiser that the goods had advanced to that amount from $1.80? If a collector can not take duty on a duress entered value when the goods are finally appraised at less than that value and more than the value claimed to be correct by the importer, on what theory can duty be taken on the duress entered value when the goods are finally appraised at the value claimed by the importer?

Under the Tariff Acts of 1913 and 1922 the Treasury Department ruled that to meet advances meant a duress entered value exactly equal to the appraised value as finally found in the pending case. That ruling under The Tariff Act of 1913 worked great hardships on importers and finally resulted in a change in the law which deprived the Treasury Department of exclusive jurisdiction in such matters and transferred it to the United States Customs Court and this court on appeal.

As I understand the majority decision, the importer can not make a duress entry of his goods at a higher value than the appraised value of his own previous importation and can not enter his later importations at the appraised value of prior importations by others. Such a construction of the statute appears to me to be extremely technical and sure to result in the imposition on a prior importer of additional duties which may be avoided by a subsequent importer of the same merchandise.

The judgment of the United States Customs Court, in my opinion, should be reversed.

### DISSENTING OPINION

BLAND, Judge: I concur in the dissenting opinion of my esteemed associate, Judge Smith, and in addition thereto desire to emphasize the following:

The result of the majority opinion almost completely destroys the duress entry provision of the tariff act, which was remedial legislation, designed to relieve a great hardship and at the same time safeguard the revenues of the country, and was the outgrowth from and improve-

ment upon previous attempts by the legislature. I can hardly voice my opposition too strongly against the emasculation of such a law by a highly technical court decision, which, in my judgment, is utterly unsound.

The argument in the quoted ruling of the Treasury Department is evidently approved by the majority in this case. There it is stated that "All it would be necessary for any importer to do to circumvent the law would be to insure that a reappraisement should be always pending covering his line of merchandise." He certainly has that right under the law. If the importer comes within the law, he is entitled to the benefits of the law.

And why should he not, in his duress entry, be permitted to base his duress entry upon the appraised value in a pending case other than his own? The statute does not limit "cases then pending on appeal for reappraisement or re-reappraisement" to his own cases. The quoted ruling of the Treasury Department would seem to confine his duress entries to his own reappraisement cases. Surely Congress meant to say that if there was a litigated appraisement then pending before the courts which threw any doubt on the value of his own goods, that he might have the advantage of the result of such appraisement. The Government could not sustain any loss, because the importer's goods would eventually be appraised and their true value ascertained. Besides, it seems to me that the good faith provision in the section would always be a check upon bad faith entries and would insure that the importer would try to enter his merchandise at its correct value.

It seems to me that the chief reason which brought the majority to the conclusion indicated in its opinion was the fact that the importer consulted the appraiser and was told that the shipments would be appraised at $1.95 per dozen, and that he then entered them at that price. Surely this fact is not controlling. Suppose he had not consulted the appraiser, but had entered at $1.95. Are we to have one law for those who consult the appraiser and another law for those who do not? This question might, under other circumstances, go to his good faith, but we must remember that the opinion of the majority is not based upon the lack of good faith, but is based upon the fact that he did not bring himself within the law, in so far as his entry was made to meet a suggestion of the appraiser and not to meet an advance in a pending case and because he did more than "meet" advances.

The judgment of the court below should be reversed.