BEAVER PRODUCTS Co., INC. (F. W. Myers & Co.) *v.* UNITED STATES (No. 3233)[1]

United States Court of Customs and Patent Appeals, February 21, 1930

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham,* special attorney, of counsel), for the United States.

[Oral argument December 6, 1929, by Mr. Tompkins and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant made 40 so-called duress entries of pulpboard in rolls, shipped from Canada, and at the time of making such entries filed the required certificate under article 268 of the Customs Regulations of 1923, certifying that the entered value was higher than the dutiable

[1] T. D. 43878.

value and was so entered to meet advances by the appraiser in similar cases then pending, to wit, entries Nos. G–303, etc., which became reappraisement 57118–A.

The merchandise in the duress entries was the same kind of merchandise, and is of the same value, as that involved in the said test case, and the question involved in the test appeal and in the duress entries consisted solely of the so-called 5 per centum Canadian sales tax.

The court below in the test case held the 5 per centum sales tax not to be a proper or legal item of value for duty purposes. The appraiser in appraising the 40 duress entries included the item of the 5 per centum Canadian sales tax. After the decision of the court in the test case, January 18, 1927, the collector, on February 23, 1927, liquidated the 40 duress entries upon the basis of the appraisal by the appraiser, which included the 5 per centum Canadian sales tax. Attention has been called to the fact that the collector liquidated the duress entries before the time for appeal in the test case had expired.

In the case at bar notice of appraisement by the appraiser in the usual form had been given to appellant, in which notice attention was called to the fact that appeal therefrom, if dissatisfied therewith, must be made within 10 days after the date of receiving the notice. Appellant took no appeal to reappraisement in the 40 duress entries and the case at bar arises on protest against the action of the collector in liquidating the entries upon a value which included the 5 per centum sales tax. The protest was grounded upon the theory that the collector had acted "prematurely and illegally, knowing that all of the 40 entries in question were 'duress' entries and that the test cases under reappraisements 57118–A, etc., had been finally decided by the Customs Court on January 18, 1927 (Circ. Reap. 431), in favor of the importers"; and that he should have liquidated the duress entries in accordance with the final appraisal in the test case instead of the appraised value in the duress entries.

It is conceded by the Government that since the merchandise in the test case and in the duress entries was similar in character and value, and, the issues being similar, that if importer had appealed to reappraisement in the duress cases duty would not have been chargeable upon the 5 per centum value representing the Canadian sales tax. The sole question here is, Under the circumstances as herein outlined, was it necessary for importer to have filed appeals to reappraisement in the 40 duress entries? The duress-entry provision is found in that portion of section 489 of the Tariff Act of 1922 which reads as follows:

SEC. 489. * * * Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this Act, and that the goods are so entered in order to meet advances by the appraiser

in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector *shall liquidate* the entry in accordance with the *final appraisement.* [Italics ours.]

It is one of the contentions of the Government that the collector acted in accordance with the mandatory provisions of the last sentence of the above-quoted paragraph, and that he liquidated the (duress) entries in accordance with the final appraised value (of the duress entries), while the importer contends that in order to make this section harmonize with the other sections hereinafter considered it is necessary to interpret the last-quoted sentence to mean that the collector shall liquidate the duress entries in accordance with the final appraisement (of the test case). The Government also grounds its position upon the provisions of section 501 and section 503, Tariff Act of 1922, which read, in part, as follows:

SEC. 501. REAPPRAISEMENT.—The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is * * * filed by the consignee, or his agent, with the collector within ten days after the date of personal delivery, or, if mailed, the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * *

SEC. 503. DUTIABLE VALUE.—Whenever imported merchandise is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof, the duty *shall be assessed upon the value returned by the appraiser,* general appraiser, or Board of General Appraisers, as the case may be. * * * [Italics ours.]

The Government argues that reading all the pertinent sections of law together compels the conclusion that Congress intended that, if a duress entrant was to obtain the relief sought by his entry, he must appeal to reappraisement; that having so appealed and won, and also the test case having been won wholly or in part, in accordance with his contentions, then he would be entitled to the relief which he herein contends for.

The appellant argues that it was not the intention of the framers of the duress provision to require appeals to reappraisement in duress entries, but that liquidation of the duress entry by virtue of the certificate filed would be suspended until the final determination of the test appeal and that then the collector would be required to liquidate in accordance with the final appraised value found in the test case.

Appellant further most earnestly urges that the Government is estopped from demanding an appeal to reappraisement before the relief sought by appellant can be obtained, since the collector at the port of Detroit, Mich., advised the importer by letter to importer's brokers that it was the opinion of his office that an importer was not required to file an appeal to reappraisement in cases where he had

·added to invoice value to meet advances made by the appraiser in ·similar cases. In view of our conclusions hereinafter arrived at, it is not necessary to pass upon this question.

In construing different parts of a tariff act which seem to be in conflict when applied in a given case, it is the duty of courts to try to harmonize the same so as to give each of them meaning and to bring about such a result as was reasonably within the contemplation of the legislature, and this the courts will do if the language used will permit. *United States* v. *Stone & Downer Co.*, 274 U. S. 225. While our conclusions herein reached may not bring such perfect harmony between the statutes, which lead to ambiguity, as might be desired, the construction which we adopt is certainly more satisfying in this respect than any construction that has been suggested here.

We do not believe that Congress, by the duress provision, contemplated that there should be separate and distinct appeals from the appraised value in the duress entries. It seems hardly probable that Congress should provide for this quick and just method of relieving an importer from the harshness of the provision for taking duty upon his entered value, and yet require him, after basing his duress entries upon the result of a test case, to appeal from the appraisement in the duress entries, if they were cases similar to the test case. It would seem that one of the chief purposes of the legislation was to avoid multiplicity of appeals where issues common to two or more entries might be adjudicated in one test case.

The basic principle in the duress-entry provision, in respect to construction in a case such as is at bar, is, we think, that in order for the duress entrant to have duty assessed on his duress-entered goods at a value less than their entered value, he must be sustained wholly or in part in his contentions by the decision in the appeal to reappraisement or re-reappraisement in the test case. In view of this conceded fact, it follows, we think, that if the duress case was "similar" to the test case, an appeal to reappraisement would afford the duress entrant no relief even if he won the appeal, unless his contentions were sustained wholly or in part by the decision in the test case. The statute plainly limits his relief in the duress entry by the provision "and importer's contentions in said pending cases shall subsequently be sustained, wholly or in part."

He may file a duress entry using the test case of another importer. The statute does not confine it to *his* test case. Let us suppose in a case like that at bar the test case was prosecuted by another importer and he lost his appeal, and, although right, did not appeal to this court. Could the duress entrant appeal and prosecute his duress ·entry to the highest court and win, and then get relief when the test ·case had been lost? We think not. His relief in the duress entries ·depends wholly upon the relief obtained in the test case. This

being true, of what avail would be an appeal in a duress case where the cases are similar? Is it possible that Congress could have wished such a moot procedure?

But it is urged that probably the value of the merchandise, aside from the 5 per centum tax, has increased, and that if no appeal is taken and the final appraised value of the test case is to control, then the true value of the duress merchandise has not been ascertained. We think this position is answered by saying that it is only necessary in order for the importer to get relief that the test case be sustained "in part." If the pulpboard in the instant case in the duress entries had been worth $2 more by virtue of the advance in the market *per se*, regardless of the 5 per centum item which was common to both cases, the collector in liquidating would not be required to take the *per se* appraised value in the test case, but, the importer having won "in part" his contentions, to wit, the 5 per centum item, it should not be included in liquidation. Let us suppose the appraiser appraised importer's duress entry exorbitantly high. There would be no inhibition against the importer appealing to reappraisement upon matters which were not involved in the test case. As to such matters as were not involved in the test case, if importer took no appeal from the appraisement, it follows that, in this respect, the importer would be bound by the appraiser's action.

In the case at bar importer's test case was won "wholly." If importer had appealed to reappraisement in the duress entries (assuming without deciding that this could have been done), nothing more could have been won than what the law already gave it as a result of winning the test case and, if the test case had been lost and importer had won in an appeal on the duress entries, the importer could not have profited.

In the decision of this issue much depends, we think, on what Congress meant by the phrase "in similar cases then pending on appeal." The same section indicates that the importer might win his pending appeal "in part." The Tariff Act of 1913 did not provide for a duress entrant winning his case "in part." This fact is not without significance. "Similar cases" does not mean identical cases, or else the statute would only have provided for winning them "wholly."

The test case at bar was won wholly and was similar in every particular, but we must also suppose that Congress had in mind cases which were only "in part" similar. If this is true, then the 5 per centum tax question common to them both may be effectively adjudicated in the test case. The fact that some cases may contain elements of similarity like the case at bar, and also elements of dissimilarity, does not militate against the conclusion herein reached.

It is said that the case of *Zinberg* v. *United States*, 16 Ct. Cust. Appls. 268, T. D. 42870, is in conflict with this position in so far as it holds the following:

Surely, it [Congress] must have had in mind that "duress" entries should cover only such merchandise as was comparable in value to that involved in the "cases then pending on appeal"; and that the issues raised by the certificate in the "duress" entries would be the same as those in the pending cases. If this is true, then, of course, it was not within the contemplation of the Congress that merchandise of a higher value—due to an advancing market—and, therefore, of a different status than that involved in "pending cases," could be brought within the "duress" entry provisions of the statute.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

We are of opinion that the Congress by the language "and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement," intended to require an importer to meet the issue in the pending case, and that in order so to do he must enter merchandise in "duress" entries at the appraised value of the merchandise in the pending case.

It must be borne in mind that in the *Zinberg* case the sole question was the *per se* value of the merchandise, and the court held that the duress entry was not based upon the value of the merchandise in the test case. The question of a common item of similarity which prevails here did not prevail there.

If the *Zinberg* case is applied to the facts at hand, it would decree that, in this instance, if appellant's goods had admittedly increased in value $5 per ton, and if this was the only question in the case and the only disputed item of value, it would not be a similar case and, therefore, could not fall within the duress provision of the statute, but the conclusion in the *Zinberg* case does not warrant a holding here that an item in which the importer may be sustained "in part," and which item is common in both cases, may not be the subject matter to be adjudicated in accordance with the duress provision.

Under the *Zinberg* case, of course, importer would get no relief on the increased value of $5 per ton because, in that respect, the cases have been held not to be similar, but in the case at bar, since appellant can win in part in the test case, and since the cases are similar in the part in which they can be won, that much of the controversy at least is the subject matter for the application of the duress-entry provision. In the *Zinberg* case, on account of the language used by Congress, we were compelled to limit the duress provision to merchandise entered under a value declared to meet exactly the value in the test case. If, in the instant case, we were compelled to hold that an item of value, separable from the *per se* value which was common to both cases, could not be the subject matter of adjudication under this paragraph, it would be such a further limitation upon the language of Congress as to almost totally destroy and render nugatory this provision which we regard as a wholesome one.

In this case we think the collector should have liquidated the entries in accordance with the final appraisement in the test case. Having failed to do so, his liquidation was subject to protest, which the court below should have sustained.

The judgment of the United States Customs Court is *reversed* and the case *remanded* for further proceedings not inconsistent herewith.

DISSENTING OPINION

HATFIELD, Judge: I am unable to concur in the views expressed in the majority opinion.

The solution of the problem presented by the appeal depends upon a proper construction of section 489 and other sections of the act *pari materia.*

It appears from the record that appellant imported certain pulp-board from Canada and entered it at the foreign value. It was appraised at the entered value plus a Canadian sales tax of 5 per centum.

The importer—appellant—appealed to reappraisement.

While this appeal was pending in the United States Customs Court, appellant, during the period from March 1 to August 28, 1926, made 40 separate entries of similar merchandise at the appraised value of the merchandise in the case then pending on appeal, and, in each of the 40 entries, certified that the entered value was higher than the "dutiable value" and that the merchandise was so entered in order to meet advances by the appraiser in the case then pending on appeal for reappraisement.

The sole issue in the "pending" case was whether the 5 per centum Canadian sales tax was included in the market value or the price at which such or similar merchandise was freely offered for sale to all purchasers in Canada. If it was, the appraised value was right. If it was not, the appraised value was wrong, and the entered value was the proper dutiable value of the merchandise. There was no issue involved relative to the cost of containers or coverings, if any, nor of any other cost, charge, or expense incident to packing the merchandise for shipment to the United States.

The trial court sustained the appraised value.

On appeal, the appellate division of the United States Customs Court held that the Canadian sales tax was not "imposed on such or similar goods" and, therefore, was not a part of foreign value. The judgment of the trial court was reversed and the entered value affirmed. Accordingly, the importer's contention in the pending case was wholly sustained.

The merchandise covered by each of the 40 "duress" entries (so-called for want of a better term, although, technically, they were not made under duress) was appraised at the entered value. There-

upon, appellant was duly served with notice of the decisions of the appraiser. Instead of appealing from these decisions, as required by section 501 of the Tariff Act of 1922, which provides that the decision of the appraiser "shall be final and conclusive" unless an appeal is taken at the time and in the manner therein specified, appellant wrote a letter to the collector at the port of Detroit, inquiring as to the legal necessity of such action, and upon receiving a reply from the collector, which appellant construed, and possibly with reason, as meaning that it was not necessary to file such appeals, acted accordingly.

Appeals not having been taken from the decisions of the appraiser, the collector liquidated each of the 40 "duress" entries in accordance with the appraised value.

It is claimed by appellant that the collector had no authority to assess the merchandise covered by the 40 "duress" entries upon the value returned by the appraiser in each of those entries, but, on the contrary, duties should have been assessed upon the final appraised value of the merchandise in the "pending" or test case.

The court below, in a carefully prepared and, in my opinion, sound decision, by Cline, Justice, overruled the protest.

It has been conceded by counsel for the Government that the dutiable value of the merchandise covered by the 40 "duress" entries was the same as that involved in the "pending" or test case; and that, had appeals been taken, as provided by law, the final appraised value of the merchandise covered by the 40 "duress" entries would have been the same as the final appraised value of the merchandise in the "pending" or test case.

It is contended by counsel for the Government, however, that the collector is required under the law to assess duties upon the final appraised value, unless the entered value is higher; and that, as the merchandise in each of the 40 "duress" entries was appraised by the appraiser at the entered value and as appellant failed to appeal, the decision of the appraiser was final and conclusive and the collector was required by law to liquidate the entries accordingly.

The pertinent parts of sections 489 and 501 provide as follows:

Sec. 489. * * * Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this Act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or rereappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement,

SEC. 501. REAPPRAISEMENT.—The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement ·is filed * * *.

Section 503 of the Tariff Act of 1922, in so far as it is pertinent to the issues involved, reads as follows:

SEC. 503. DUTIABLE VALUE.—Whenever imported merchandise is subject to an ad valorem rate of duty or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the value returned by the appraiser, general appraiser, or Board of General Appraisers, as the case may ·be. * * *

In the case of *Ciba Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 309, T. D. 41913, this court was called upon to determine the purpose of the Congress as expressed in the provisions of sections 489 and 503, hereinbefore quoted. We concluded our discussion in that ·case with the following observations:

Our understanding of the provisions of section 489 in question may be summarized as follows: "Duties shall not, however, be assessed upon an amount less than the entered value," except under certain circumstances and conditions; ·and when those circumstances and conditions prevail "the collector shall liquidate the entry in accordance with the final appraisement." The last clause of ·section 489 is significant.

There it was claimed by counsel for the importer that the language "Duties shall not, however, be assessed upon an amount less than the entered value," contained in the quoted provisions of section 489, was intended by the Congress to relate solely to merchandise ·covered by so-called "duress" entries, and that, as the entry there involved was not·a "duress" entry, duty should have been assessed upon the final appraised value in accordance with the provisions of section 503, *supra*, even though the entered value was higher than the appraised value.

In the case at bar it is contended by counsel for appellant that the provisions of section 503 have no application to merchandise covered by "duress" entries. In other words, although the results desired by counsel in the two cases are just the opposite, the contention is the same; that is, that the provisions of one section should be construed without regard to the provisions of the other.

In the former case we refused to follow the suggestions of counsel for importer and held that the provisions of sections 489 and 503 were *pari materia* and should be considered together in order that the intention of the Congress might be given effect. Obviously, if we were right then, there is no sound reason for holding to the contrary now. Furthermore, I am of opinion that, in construing the involved provisions of section 489, the provisions of section 501 should also be ·considered.

Prior to the enactment of the Tariff Act of 1913, if the entered ·value of imported merchandise was higher *in any case* than the final

appraised value, the law required that duty be assessed upon the entered value. Accordingly, if an importer entered his merchandise at a value higher than the final appraised value, he was required to pay duty upon the entered value; or if he entered it at a value less than the final appraised value, his merchandise was assessed with additional duties. Furthermore, if an entered value was advanced by the appraiser and an appeal to reappraisement was taken by importer, and, as was frequently the case, additional importations of similar merchandise were made from time to time, while the initial reappraisement case was pending, the importer was confronted with a dilemma; if he entered the various shipments at the value he thought was correct (assuming the value of the merchandise in the subsequent shipments was, or was thought to be, identical with the value of that in the pending case) and it was determined by the appraising officers that the entered value was lower than the market value, his merchandise would be subject to additional duties; or if he entered the merchandise at the appraised value in the pending case, and it was later determined that the market value was lower, he was required, nevertheless, to pay duty upon the entered value. Naturally, the Congress heard considerable complaint from importers. So, in Paragraph I of the Tariff Act of 1913, the Congress added to the language "The duty shall not, however, be assessed in any case upon an amount less than the entered value," which had appeared in prior tariff acts, the following:

* * * unless by direction of the Secretary of the Treasury in cases in which the importer certifies at the time of entry that the entered value is higher than the foreign market value and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, and the importer's contention shall subsequently be sustained by a final decision on reappraisement, and it shall appear that the action of the importer on entry was taken in good faith, after due diligence and inquiry on his part, and the Secretary of the Treasury shall accompany his directions with a statement of his conclusions and his reasons therefor.

In the case of *Mills & Gibb* v. *United States*, 8 Ct. Cust. Appls. 31, T. D. 37164, this court was requested to construe the quoted provisions of Paragraph I, *supra*, and to reverse a decision of the Secretary of the Treasury holding that the language "and the importer's contention shall subsequently be sustained by a final decision on reappraisement," contained in said paragraph, was intended by the Congress to mean that the contentions of the importer in the initial or "pending" case must be wholly sustained in order to give the Secretary authority to grant relief. The court held that it did not have jurisdiction to review the decision of the Secretary of the Treasury. However, in disposing of the case the court took occasion to say:

In the customs administrative act of 1890 it was enacted that "the duty shall not, however, be assessed in any case upon an amount less than the invoice or entered value." (Par. 7.)

In the Tariff Act of 1909 it was enacted that "the duty shall not, however, be assessed in any case upon an amount less than the entered value." (Subsec. 7, sec. 28.)

In Paragraph I, supra, of the Tariff Act of 1913 Congress reenacted this provision of the Tariff Act of 1909, but committed to the Secretary the authority in *given cases to direct an assessment of merchandise at its reappraised value even though this be less than the entered value.* [Italics mine.]

It may be argued that the views thus expressed were not necessary to a decision in the case. That may be true. However, they were the views of the court at that time and were expressed with such positiveness as to indicate that but little patience would have been shown with any other proposed construction. But whether or not the pronouncement be considered *obiter dictum*, it would seem to be clear that there was nothing in Paragraph I, *supra*, to remotely indicate that the merchandise covered by "duress" entries was intended to be liquidated *upon the final appraised value of the merchandise in the "pending" case.* On the contrary, the merchandise covered by the "duress" entry was required to be liquidated upon *its* final appraised value.

It has been suggested, and this view is followed in the majority opinion, that the language "wholly or in part," contained in section 489, was intended to permit the filing of "duress" entries in the event that such entries and the "pending" case had *some,* but not all, issues in common. Pursuing this reasoning, it is held that the 5 per centum Canadian sales tax should not be considered a part of the *per se* value of the merchandise, but that it is more in the nature of an independent item subject to isolation from the other elements of foreign value (in somewhat the same manner, I suppose, as are costs of containers and other charges and costs mentioned in section 489). From this it follows, it is said, that cases may be "similar" within the meaning of the statute—section 489—if they have in common some issue which could be disposed of in the initial or "pending" case. As to such an issue, it is held, there is no legal necessity (it is even intimated that there is some doubt of the right to appeal) for filing an appeal from the decision of the appraiser in "duress" entry cases. However, in all cases where there may be an issue involved in the "duress" entry which is not presented in the "pending" case, and in all other "duress" entry cases, an importer must appeal from an adverse decision of the appraiser, should he desire to enforce his rights in the courts. This anomalous situation, it is said, results from an effort to give the involved provisions of section 489 a reasonable construction, taking into consideration the sections of the act *pari materia.* I quote from the majority opinion:

While our conclusions herein reached may not bring such perfect harmony between the statutes, which lead to ambiguity, as might be desired, the construction which we adopt is certainly more satisfying in this respect than any construction that has been suggested here.

And so, under this construction, the decisions of the appraiser are "final and conclusive against all parties" in *some* cases, unless appeals are taken, "final and conclusive" as to *some issues* "against all parties" in other cases, unless appealed from, and, in still other cases, without any finality or legal effect. Taking into consideration the fact that section 489 provides "that the collector shall liquidate the entry in accordance with the final appraisement," and that the provisions of section 501 plainly and positively provide, without limitation or qualification, that the decisions of the appraiser "shall be final and conclusive upon all parties," unless appeals are taken as therein provided, this holding seems strange indeed.

The involved language of section 489 is somewhat different from the language of Paragraph I, *supra*. All reference to the Secretary of the Treasury has been omitted. The language "wholly or in part" was not, in my opinion, inserted in section 489 for the purpose of dividing an appraisement case into parts, but was intended to broaden the scope of the section and to relieve an importer in a "duress" entry from paying duty on the *entered* value, in the event the merchandise in the "pending" case was finally appraised at *less* than the value returned by the local appraiser. The Congress was, of course, aware of the construction placed upon Paragraph I, *supra*, by the Treasury Department, holding that duties could not be assessed upon a value less than the entered value in a "duress" entry, unless the contentions of the importer in the "pending" case had been wholly sustained. For example: If the merchandise in the "pending" case had been entered at 50 cents per pound and appraised at 75 cents per pound, and the final appraised value was held to be less than 75 cents but more than 50 cents per pound, the importer's contentions in the "pending" case had not been sustained, and no relief could be granted the importer in the "duress" entry, even though the final appraised value of the merchandise covered thereby was lower than the entered value.

The language "and the collector shall liquidate the *entry* in accordance with the *final appraisement*," contained in section 489, was not in Paragraph I, *supra*. (Italics mine.)

It is contended by counsel for appellant that this provision was intended by the Congress to refer to the final appraisement in the "pending" case, and that merchandise in all "duress" entries, in the event the "pending" case is won, wholly or in part, should be assessed by the collector *upon the final appraised value of the merchandise in the "pending" case.*

As I understand the majority opinion, the court has not accepted this construction, but has held, without any discussion of the meaning of the quoted language, that sometimes it means one thing and sometimes another. Where there is a similar but separate issue

common to both the "pending" case and the "duress" entry, the collector shall be controlled as to such issue or item of value by the *final decision in the "pending" case*, and as to this issue or item of value, the importer need not appeal from the decision of the appraiser in the "duress" entry case. However, as to all other issues and items of value involved in that "duress" entry, an appeal must be taken from the decision of the appraiser, and the collector is required to assess duty upon the *final appraised value of the merchandise covered thereby*. Again, if the value of the merchandise in the "pending" case is exactly the same in all respects as the value of the merchandise in the "duress" entry (just how this is to be determined, unless the merchandise is appraised and reappraised in the manner provided by section 501, *supra*, is not explained in the majority opinion and is somewhat obscure to me, unless of course some arrangement may be made to secure stipulations as to value), *the collector is required to assess duty upon the merchandise covered by the "duress" entry in accordance with the final appraised value of the merchandise involved in the "pending" case*. And, finally, in all cases other than those coming within the two classes above mentioned the collector is required to assess duty upon the merchandise covered by the "duress" entry in accordance with *its final appraised value*.

It will be observed that the Congress has used the words "entry" or "entered" in the statute whenever reference is had to a "duress" entry, and that it has referred to "pending cases" by that term, or by the term "similar cases." Furthermore, it has applied the words "reappraisement or re-reappraisement" to "pending cases." Why, then, should the words "entry" and "final appraisement" in the language "and the collector shall liquidate the entry in accordance with the final appraisement," contained in the statute, be construed as relating to "pending cases"? In my opinion, those words were intended to relate to the "duress" entry and not to "pending" cases. Surely, if the Congress had intended that merchandise involved in a "duress" entry should be assessed upon the final appraised value of some other merchandise, some apt language would have been used to express such an unusual purpose.

In the case of *Harry Zinberg* v. *United States*, 16 Ct. Cust. Appls. 268, 271, T. D. 42870, this court considered the involved provisions of section 489, and, among other things, said:

The manifest purpose of the Congress in enacting the additional duties provisions in section 489, and in providing that "duties shall not, however, be assessed upon an amount less than the entered value," was to require importers to *ascertain* the dutiable value of imported merchandise, *and* to *enter* it at such value. Were it not for those provisions the entire burden of ascertaining the dutiable value of imported merchandise would fall upon the officials of the Government.

The only exception to the provision that duties shall not be assessed upon an amount less than the entered value is in a case where the "importer certifies at the time of entry that the entered value is higher than" the dutiable value, "and that the goods are *so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement.*" [Italics ours.] But this is not all that is required of the importer. Before he is entitled to any relief under these provisions the *contention of the importer in the pending case or cases* must be sustained, wholly or in part, by a final decision of the court on appeal or review. More than that, it must appear that the "action of the importer on entry *was so taken in good faith, after due diligence and inquiry on his part.*" [Italics ours.]

We also said in that case:

It must be remembered that the *statute requires the collector to liquidate the "duress" entries at the appraised value of the merchandise covered thereby, if the importer's contentions in the cases pending on appeal have been sustained, wholly or in part.*

Of course, it may be argued that the last-quoted statement was *obiter dictum* and that the court is not bound thereby; maybe so. It may be said, however, that the quoted language, aside from its positiveness, was italicized to give it added emphasis. Furthermore, like the language giving the same construction to Paragraph I of the Tariff Act of 1913, in the *Mills & Gibb* case, *supra*, it apparently had the approval and good will of the court at the time the case was decided. But however that may be, the purpose of the statute, in my opinion, is to give importers an opportunity to avoid the entered-value provisions of section 489, as to cases therein described, and to have imported merchandise in such cases assessed for duty in accordance with the provisions of section 503, *supra*, that is, upon *its final appraised* value, rather than upon *its entered* value. As thus construed, the provisions of section 489 are harmonized with the provisions of sections 501 and 503, and a simple, understandable, and practical method of procedure is obtained.

It was the duty of the appraiser under the law to appraise the merchandise covered by the "duress" entries. He did so. Section 501 provides that the decisions of the appraiser shall be final and conclusive against all parties unless an appeal is taken as therein provided. Appellant having failed to appeal from the decisions of the appraiser in the "duress" entry cases, it was the manifest duty of the collector to liquidate those entries, which he did, in accordance with the value returned by the appraiser.

For the reasons stated, I am of opinion that the judgment should be *affirmed*.

LENROOT, Judge, concurs in the above dissent.