## JOHNSON CO. *v.* UNITED STATES (NO. 2559)[1]

1. STIPULATION CAN NOT ALTER JUDGMENT.

    A stipulation of counsel, submitted to the Board of United States General Appraisers but not appearing to have been approved by it, to change the value found by the board on an appraisement review, can not have the effect of altering or amending the board's judgment.

2. PRACTICE AND PROCEDURE—CONSTRUCTION, SECTION 501, TARIFF ACT OF 1922—REAPPRAISEMENT APPEAL.

    The word appeal, when used by Congress without qualification, has always been held in the courts of the United States to mean a reexamination or a new trial of the entire subject matter as to both law and facts. It is so used in that part of section 501, Tariff Act of 1922, which provides for an "appeal for a reappraisement" by a general appraiser.

3. PRACTICE AND PROCEDURE—CONSTRUCTION, SECTION 501, TARIFF ACT OF 1922—"REVIEW" OF REAPPRAISEMENT—"RE-REAPPRAISEMENT."

    In its ordinary legal signification "review" means an examination by a higher court of the proceedings of a lower. The word is so used in the provision of section 501, Tariff Act of 1922, for a "review" by a board of three general appraisers of the reappraisement made by a general appraiser.

4. PRACTICE AND PROCEDURE—REAPPRAISEMENT DE NOVO.

    The "appeal for a reappraisement" by a general appraiser, provided for in section 501, Tariff Act of 1922, institutes a trial *de novo* by him.

5. PRACTICE AND PROCEDURE—REAPPRAISEMENT REVIEW APPELLATE.

    The application for the review by a board of three general appraisers of the decision of a general appraiser on an appraisement appeal, provided for in section 501, Tariff Act of 1922, is appellate only; and nothing is before it but the record (including the evidence) which was before the general appraiser.

6. PRACTICE AND PROCEDURE—CONSTRUCTION, SECTION 501, TARIFF ACT OF 1922—"RECORD"—BILL OF EXCEPTIONS—REAPPRAISEMENT REVIEW—"RE-REAPPRAISEMENT."

    While, strictly speaking, the word "record" does not embrace the evidence, it is obvious that Congress so used it in the provision of section 501, Tariff Act of 1922, that the "review" by a board of three general appraisers of a reappraisement must be on the samples, if any, "and the record made before the general appraiser." Such evidence must necessarily be in the form of a bill of exceptions.

---

T. D 41318.

7. PRACTICE AND PROCEDURE—REAPPRAISEMENT REVIEW—"RE-REAPPRAISE-
    MENT"—APPELLANT, NOT APPELLEE, MAY HAVE RELIEF.
    It was reversible error for the board of three general appraisers, in review-
ing a reappraisement by a general appraiser, to correct errors not appealed
from.   An appellant, not an appellee, may have affirmative relief.

8. CONSTRUCTION, SECTION 402 (d), TARIFF ACT OF 1922—UNITED STATES
    VALUE—ALLOWANCE FOR GENERAL EXPENSES—CONSIGNED GOODS—
    CHANGE IN PUNCTUATION—PUNCTUATION CORRECTED.
    Section 402 (d), Tariff Act of 1922, prescribing the method of appraising at
the United States value, grants "a reasonable allowance [from the United
States selling price] for general expenses, not to exceed 8 per centum on pur-
chased goods."   The language of the corresponding provision in paragraph L,
Section III, tariff act of 1913, was identical except that the phrase "not to
exceed 8 per centum" was in parentheses.   The purpose was not to grant
the allowance to *all* goods and limit it to 8 per centum on *purchased* goods.
Congress intended to substitute commas in 1922 for the parentheses used in
1913, and the second comma was inadvertently omitted.   Consequently, the
allowance is not now, as it was not then, to be made on *consigned* goods;
and the board of three general appraisers, in reviewing a reappraisement by
a general appraiser, correctly sustained his action in denying claims for allow-
ances as to such goods for teaming from the railroad terminal to importer's
warehouse, for storage in the warehouse, and for teaming from the warehouse
to importer's customers.   The purpose of the provision is to give an American
purchaser an advantage over a foreigner who markets his goods here through
agents or consignees.

9. PRACTICE AND PROCEDURE—CONCESSION OF COUNSEL—REAPPRAISEMENT
    REVIEW—"RE-REAPPRAISEMENT."
    On review by a board of three general appraisers of a reappraisement by
one general appraiser, the inquiry being as to allowances from the United
States selling price to make United States value under section 402 (d), Tariff
Act of 1922, where importer claimed smaller allowances than those given
him below, it was right to give him what he claimed.

United States Court of Customs Appeals, January 18, 1926

APPEAL from Board of United States General Appraisers, Circ. Reap. 35347

[Reversed and remanded.]

*Waterhouse & Lockett* and *Clarence L. Newton* (*Philip R. Johnson* of counsel)
for appellant.
*William W. Hoppin*, Assistant Attorney General (*John G. Lerch* and *Peter A.
Abeles*, special attorneys, of counsel), for the United States.

[Oral argument October 30, 1925, by Mr. Lockett and Mr. Johnson, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD,
Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:
This is an appeal in a reappraisement matter.   H. A. Johnson
Co. imported by rail at New York three consignments of blue-
berry pie stock.   This pie stock was manufactured and prepared at

Mount Stewart, Prince Edward Island, Canada, by a branch house of the importer and was then consigned to the importer at New York. The three consignments involved here comprised about 900 kegs, all of which were delivered to the importer at the railroad terminal at New York. On entry No. 750218 the merchandise was entered at $7.21, on entry No. 750219 at $7.235, and on entry No. 747610 at $7.416, per hundred pounds. The merchandise, in each case, was appraised by the local appraiser at 9 cents per pound. On appeal to a single general appraiser, the appraised value, in each case, was affirmed. On further appeal, the Board of General Appraisers fixed a value of $0.11596 per pound for dutiable purposes. From that judgment the importer appeals.

On the hearing before the single general appraiser it was stipulated by the parties that there was no foreign and no export value for the merchandise in question, and that the United States value, as fixed by subdivision (d) of section 402, Tariff Act of 1922, was the proper basis. It was further stipulated that the American selling price in New York City of this merchandise, at the time of exportation was 16.5 cents per pound. This selling price was the price made to purchasers in any quantity, wholesale or retail, repacked in containers, delivered to the customers in New York City and its suburbs and in New Jersey. Outside of this territory an additional charge was made for freight.

The importer claimed before the single general appraiser, as allowances from the American selling price to fix United States value, the following items: Freight from Prince Edward Island to New York, $0.00853 a pound; teaming from the railroad freight terminal in New York to importer's warehouse, $0.00112 per pound; teaming from importer's New York warehouse to places of business of customers, $0.00296 a pound; for storage of goods in importer's New York warehouse, $0.00036 a pound; for containers, $0.01255 a pound; for a profit of 8 per centum, $0.01223 per pound; for duty, $0.02596 a pound; for general expenses in the New York store of importer, $0.02711 a pound. Thus computed, the total allowance would amount to $0.09082 a pound, leaving a United States value of $0.07418 a pound.

The single general appraiser seems to have fixed his valuation according to the computation of United States Examiner Slavin, whose testimony appears in the record. This witness testified that he took as his initial value, $0.165 per pound, or a total value per keg of an estimated net weight of 140 pounds, of $23.10. This keg he found to be of American manufacture, and hence free of duty. He thereupon deducted $1.80 as the value of the keg, 8 per centum, or $1.58, for profit, 8 per centum, or $1.46 for expenses, $1.16 for freight from place of exportation to the New York railroad terminal, and $4.43⅛ for

duty.    This gave him a value of $12.66⅔ for 140 pounds, or 9 cents per pound.

The board took as the basis of its computation $0.165 per pound. It then allowed, as deductions to fix dutiable value, the amounts fixed by the importer as allowances for duty $0.02596, for freight $0.00853, and for containers $0.01255 per pound, or a total deduction of $0.04704 per pound, leaving a United States value of $0.11596 per pound, as heretofore stated.

A stipulation appears in the record, purporting to amend the judgment by substituting $0.10661 per pound for the amount found by the board, namely, $0.11596 per pound, as the dutiable value of the merchandise here.    As this stipulation does not appear of record to have been approved by the board, it can not be considered.    Such a stipulation of counsel can not have the effect of amending or altering such a judgment.    The case before us must therefore be considered upon the dutiable value as found by the board, $0.11596 per pound.

The principal matter involved here is the scope and extent of the jurisdiction of the Board of General Appraisers in reappraisement matters under section 501, Tariff Act of 1922.    Appellant claims such jurisdiction is appellate only and that such board exceeded its jurisdiction as an appellate court when it gave to appellee a more favorable judgment than it had before the single general appraiser.    On the other hand, the Government contends, and the board so holds, that the proceedings by the board, under said section 501, is a trial *de novo*, as a result of which any judgment might be entered which the board finds should have been entered by the single general appraiser.    This proposition involves an analysis and construction of the section.

Said section 501 is as follows:

501. Reappraisement.—The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the Board of General Appraisers by the collector within sixty days after the date of the appraiser's report, or filed by the consignee, or his agent, with the collector within ten days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney.    No such appeal filed by the consignee, or his agent, shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise.    Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the Board of General Appraisers and shall be assigned to one of the general appraisers, who shall ascertain and return the value of the merchandise and shall give reasonable notice to the importer and to the person designated to represent the Government in such proceedings of the time and place of the hearing, at which the parties and their attorneys shall have an opportunity to introduce evidence and to hear and cross-examine the witnesses of the other party and to inspect all samples and all papers admitted or offered as evidence. In finding such value affidavits of persons whose attendance can not reasonably

be had, price lists, catalogues, reports or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered. Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

The decision of the general appraiser, after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an Act entitled "An Act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911.

In *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T. D. 40944, this court found it necessary to discuss matters nearly approaching those involved here. In the case cited the necessity of samples at the hearings before the single general appraiser and the Board of General Appraisers was at issue. In that connection Hatfield, J., delivering the opinion of the court, called attention to the fact that under sections. 486, 499, 500, and 501 of the Tariff Act of 1922 fundamental changes had been made from the law theretofore in effect; that under the tariff acts of 1909 and of October 3, 1913, the single general appraiser and the Board of General Appraisers in reappraisement matters might exercise both inquisitional and judicial powers, and that therefore in such matters they could not be considered as acting as judicial tribunals; that under the cited provisions of the Tariff Act of 1922 in reappraisement matters the single general appraiser exercises a judicial function; and that the functions of the Board of General Appraisers in such matters are judicial.

If, then, the functions of the single general appraiser and the Board of General Appraisers in reappraisement matters are purely judicial, the ordinary rules applicable to other courts and judicial proceedings will apply except where modified or amended by the statutory law here applicable.

It is advisable to consider at this point the various steps which are and may be taken in the appraisement of imported merchandise under the Tariff Act of 1922. After the appraiser of merchandise has performed his duties, as outlined in section 500 of said act, the following provisions are made by said section 501: The decision of the local appraiser is final and conclusive upon all parties unless a "written appeal" for a reappraisement is filed; no such "appeal" filed by the consignee or his agent shall be valid unless the requirements of the law as to entry and appraisement have been met. The statute provides that the "appeal" shall be assigned by the Board of General Appraisers to one of its number for hearing. This general appraiser hears the matter as a *nisi prius* court; the parties have notice and may call witnesses and examine and cross-examine. The practice, in such cases, is set out with much particularity in the section. Upon this hearing the broadest latitude is allowed for the introduction of evidence; in fact, much matter is made evidentiary which ordinarily is not so regarded by the courts.

The word "appeal" when used by Congress in an act without qualification has always been held in the courts of the United States to mean a reexamination or a new trial of the entire subject matter, both as to the law and facts. In *Wiscart v. D'Auchy*, 3 U. S. 321, Ellsworth, Ch. J., said:

It is to be considered, then, that the judicial statute of the United States speaks of an appeal and of a writ of error; but it does not confound the terms nor use them promiscuously. They are to be understood, when used, according to their ordinary acceptation, unless something appears in the act itself to control, modify, or change the fixed and technical sense which they have previously borne. An appeal is a process of civil-law origin, and removes a cause entirely, subjecting the fact, as well as the law, to a review and retrial; but a writ of error is a process of common-law origin, and it removes nothing for reexamination but the law.

This doctrine has been continuously and uniformly followed. *United States v. Goodwin*, 11 U. S. 107; *Dower v. Richards*, 151 U. S. 658; *Capital Traction Co. v. Hof*, 174 U. S. 1 (37); *Elliott v. Toeppner*, 187 U. S. 327 (334); *Behn v. Campbell*, 205 U. S. 403; *Cincinnati v. Traction Co.*, 245 U. S. 446; *Nashville Ry. Co. v. Bunn*, 168 Fed. 862; *Skolnik v. United States*, 4 Fed. (2d) 797.

It is apparent, therefore, that the proceedings before the single general appraiser, on such appeals, are hearings *de novo*, as the result of which judgments are rendered which settle and determine the dutiable value of the . imported merchandise in question. The judgment rendered on such appeal is made by the statute final and conclusive upon the parties except where further proceedings are had, as further provided in said section 501. The exact nature of and interpretation to be placed upon these further proceedings is our chief interest here.

Section 501 provides that either party may, within 10 days after the filing of the decision last hereinbefore mentioned, file with the collector "an application for its review." This "application" is to be assigned to a board of three general appraisers, "who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser," and shall, thereupon, "affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings."

It will be observed that in this language the word "appeal," is not used; the proceeding before the board, whether it may be considered a trial *de novo* or appellate only, is purely a creature of the statute. We are without the help which the authorities might give us in our interpretation of the nature of the proceeding before the single general appraiser, or even in the following language, where an "appeal" to this court is provided for.

The section provides that the party so desiring may file an "application for review." We are aware of no precise definition ever given by the courts of the United States for the word "review." In the absence of such a definition, the ordinary meaning would obtain. Webster (New International) Dictionary thus defines the term:

2. Law, Specif., judicial re-examination, as of the proceedings of a lower court by a higher.

And this, we believe, is the meaning practically always applied to the term where it is used in the laws of the United States. To illustrate, section 237 of the Judicial Code, as amended by the act of February 13, 1925, provides for the review by the Supreme Court, in certain cases, of the final judgments or decrees of State courts of last resort. To a like effect is section 238 of the above cited act, and many other similar statutes not necessary to cite here. We think, without exception, the term, as applied in Federal statutes and practically all State courts, must be understood in this light. In *Weehawken Wharf Co.* v. *Knickerbocker C. Co.*, 25 Misc. 309, the court said:

The words "to review" must be taken to mean to review on appeal, for that is the only method we know of where a review may be had. * * * The words "to review" mean simply that the court, on appeal, may be asked to consider the question presented below as the ground for the determination in the order.

The statute says the board shall consider the case upon the *record* made before the single general appraiser. Manifestly, it was not intended by the framers of this language that the board, in such cases, should receive further evidence. If so, the language quoted need not have been used. Congress plainly intended to limit and restrict the extent of the hearing before the board, and hence used the language: "on the record made before the single general appraiser." The record, in its common law acceptation, meant a precise history of a suit from its commencement to its termination, including the con-

clusion of the law thereon, drawn up by the proper officer, for the purpose of perpetuating the exact state of the facts. Anderson Law Dictionary, 863. Or, as expressed by Coke, Litt. 260a:

Records are memorials or remembrances, in rolls of parchment, of the proceedings and acts of a court of justice, which hath power to hold plea according to the course of the common law.

But we think it can hardly be properly contended here that the words "on the record," as found in section 501, should be confined to such narrow limits. If the board, on review, were required to review the matter upon the record only, as strictly construed, then nothing would be before the board but the original appraisement, the appeal to reappraisement, the samples, if any, and the decision and judgment of the single general appraiser, and the board would find itself compelled to review such decision without the benefit of a single word of the evidence offered before the general appraiser. It must appear, therefore, that the word "record" as here used means not only the record proper but the evidence as well. If this be true, then it follows that such evidence must be preserved, in cases where such review is desired, and transmitted to the board, in the form of a bill of exceptions, duly certified by the general appraiser who heard the matter. If this were not the practice, then it is impossible to see how, in cases of conflict between the parties, it might be determined just what evidence was and what was not heard by the single general appraiser. In such cases the power to settle such bill of exceptions must reside within the single general appraiser.

Finally, the language of the section is that the board "shall affirm, reverse, or modify the decision" or "remand the case for further proceedings." This language is that ordinarily applied to the judgments of an appellate court and is seldom, if ever, used where the proceeding, in a court to which a cause is removed, is *de novo*. It will be observed the section does not provide that the board may, upon such review, "ascertain and return the value of the merchandise," as is theretofore provided as the function of the single general appraiser; the board may simply review his decision, and correct the errors therein, if any. There is a wide distinction between cases where the reviewing court is called upon to do the thing which the court or tribunal of first instance should have done and those where the reviewing court simply passes upon the correctness of the judgment of the court of first instance. This distinction is well illustrated by the following cases:

*Lester v. Price*, 3 S. E. 529 (Va.), was a case involving appeals from county to circuit courts in matters of the issuance of dramshop licenses. There the applicant was given a right of appeal. The court said:

It is important to observe that the circuit court, or judge thereof in vacation, has no authority to review, and either affirm or reverse, the judgment of the

county or corporation court, as the case may be; on the contrary, by the express terms of the statute, the circuit court, if in term time, or the judge thereof, if in vacation, is authorized either to grant or refuse the license. Hence the appeal to the circuit court or judge is nothing more nor less than an application *de novo* to the circuit court to do outright, at the instance of the party appealing, what the county or corporation court has refused to do.

In *Grimes* v. *City of Burlington*, 37 N. W. 106 (Ia.), there was an appeal from a decision of the State Board of Equalization, under the statute, to the circuit court. The circuit court was directed by the statute to determine the liability to assessment. It was said:

While an appeal is authorized by statute unless otherwise restricted, the proceeding in all cases is anew in order to determine the very merits of the matters in dispute.

It was held that as the court became the assessing tribunal, and was not restricted to the testimony and facts before the board, it should try the whole matter *de novo*.

From these various deductions we are led to the conclusion that the proceedings of the Board of General Appraisers contemplated by section 501, are appellate, and not a trial *de novo*.

The Board of General Appraisers, under the authority of section 518, Tariff Act of 1922, established, on October 30, 1922, certain rules of practice. A part of Rule XXIV is as follows:

Upon the appeal of a reappraisement case from the decision of a general appraiser to a Board of General Appraisers the appellant shall file on or before the day upon which the case is set for trial before the board, a brief statement in writing of the grounds of his appeal, stating in concise form any question of law which he considers the single general appraiser may have decided erroneously, and if the appeal is taken upon a question of fact a brief statement of the facts upon which he contends the single general appraiser should have decided otherwise than he did.

This rule provided for what was, in effect, an assignment of errors, upon inspection of which the board might ascertain, on review, what the particular grounds of error urged by the party appealing were. In the case at bar such an assignment of errors appears, which, as it is returned by the board as a part of the record here, and in the absence of any contention to the contrary, we shall assume was properly filed in conformity with the rule quoted. By this appeal and assignment of errors the importer questioned the decision and judgment of the single general appraiser as to his disallowance of certain items, to wit:

3. In failing to make an allowance for general expenses of approximately $0.027 per pound.

4. In failing to make an allowance for teaming charges from the freight terminal to the warehouse in New York City.

5. In failing to make an allowance for teaming from New York warehouse to delivery points in New York City.

6. In failing to make an allowance for storage in New York City.

The Government did not make application for a review, resting content upon the judgment of the single general appraiser.

The board thereupon, on review, disallowed the various claims made by importer in his assignment of errors, and, in addition thereto disallowed various other claimed items of exemptions which had theretofore been allowed by the single general appraiser, in this way increasing the dutiable value from $0.09 a pound to $0.11596 a pound. In this way the Government, although not applying for a review, obtained a more favorable judgment than it had had in the court of first instance.

We are unable to conclude that this is a correct conclusion of the matter. If the proceeding before the board is appellate, then, surely, the same rules must apply which would obtain in other courts of appeal. We believe the rule is uniform that a suitor, to obtain affirmative relief upon appeal, must himself be a moving party; courts will not busy themselves seeking relief for a suitor who asks nothing for himself.

*United States* v. *Lies*, 170 U. S. 628, was an appeal from the Board of General Appraisers to the Circuit Court of Appeals of the Second Circuit by the importer. When the matter came on for hearing, the importer moved for an affirmance of the judgment; the Government objected, asking for a reversal upon errors. This the Supreme Court denied, saying:

If therefore the Government, through the collector or the Secretary of the Treasury, seeks to review a decision made by the Board of General Appraisers because either of such officers may think such decision is in any or all of its provisions too favorable to the importer, the section (15) provides the way and the only way in which that review is to be obtained. If neither officer should take the proceedings so provided for, by applying for a review and filing with the clerk the statement of the errors of law and fact of which he complains and by serving a copy upon the importer, then the officer could not ask for a reversal of the decision, for it is clear that the appeal on the part of the importer would not give the Government that right. What would be the purpose of the provision for filing and serving this paper defining the errors of law and fact complained of, if, without it, the decision or any part of it made by the board could be reversed upon the application of the Government made on the appeal of the importer? The plan of the statute evidently contemplates action by both parties if both are dissatisfied.

This court adopted the same view in *Surgical Supply Imp. Co.* v. *United States*, 3 Ct. Cust. Appls. 112, where the court refused to examine claims not made upon appeal. Again, in *United States* v. *Von Oefele*, 4 Ct. Cust. Appls. 284, we said:

The Government urges in the brief accompanying its motion for rehearing that the importer not having appealed from the judgment of the board is not entitled to obtain in this court, at the appeal of the Government, a judgment more favorable to him than that rendered by the board. We think this contention is sound.

A party who is dissatisfied with the judgment of a lower tribunal in order to obtain a review thereof and a judgment in an appellate tribunal more favorable to himself than that of the judgment under review must take his appeal, and, failing in that, can be heard only in support of the judgment or decree from which the appeal is taken by the other party. The *Maria Martin* (79 U. S. 31); *United States v. Lies,* 170 U. S. 628; *In re Crowly,* 50 Fed. 465; *In re Gribbon,* 55 Fed. 874.

We believe the holding here should follow the reasoning of the cases just cited.

We come now to the particular items involved in the claim of importer here which involves a construction of section 402 (d) of the said tariff act. That section is as follows:

Sec. 402. (d) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty; cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Starting with a conceded United States selling price of $0.165 per pound, importer claims certain deductions therefrom under said section 402 (d), to make dutiable United States value which it claims should be $0.07418 per pound, or entered value. These deductions are, as claimed, per pound: Freight, $0.00853; containers, $0.01255; teaming, railroad terminal to warehouse, $0.00112; storage, $0.00036; store expenses, $0.02711; teaming, warehouse to delivery, $0.00296; profit, $0.01223; and duty, $0.02596. The first item, freight, was found by the single general appraiser to be $0.0083 per pound; the board found it to be $0.00853. This was a proper deduction. The only evidence in the record shows the correct amount to be $0.00853, and the decision of the board as to this item is correct. The next item is that of containers. The single general appraiser found this item to be $0.0129 per pound, while the board fixed it at $0.01255. These were kegs, the ordinary containers of the goods and in which they were imported, manufactured in the United States, and hence were free of duty under paragraph 1514, of said tariff act. The only evidence in the record on the subject indicates that the board found the correct amount as to this item. The items of teaming, terminal to warehouse, $0.00112, storage, $0.00036, and teaming, warehouse to delivery, $0.00296, were disallowed by both the single general appraiser and the board. These are claimed to be allowable under the language "a reasonable

allowance for general expenses, not to exceed 8 per centum on purchased goods," in said paragraph 402 (d).

The record shows the three items of claimed deductions last above mentioned to have been expenses incident to moving the imported goods from the railroad terminal to importer's warehouse, the *pro rata* cost of storage while awaiting sale, and the expense of delivery to the ultimate consumer. It is evident this provision for "general expenses" has reference only to purchased goods. It is conceded in the case at bar that the goods imported are on consignment    The language of the section is:

A commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, *or* profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

It will be observed this portion of section 402 (d) is divided into two subdivisions, connected by the alternative conjunction "or," which we have italicized. It was the obvious intention of Congress to give to the American purchaser of imported goods some advantages over the foreign importer who produced his goods abroad and then marketed them in this country through its agents or consignees. Therefore, while the section gives to the foreign importer a commission not exceeding 6 per centum, if he incurs such expense, on the other hand it gives to the American importer and purchaser an additional allowance up to 8 per centum for expenses in importing his goods, and allows him profits of not exceeding 8 per centum.

But counsel for appellant argue that Congress has evidenced a desire to change the meaning to be attached to this language and call attention to a grammatical change therein made from that of the tariff act of October 3, 1913.

Paragraph L, Section III, of the said act of 1913, provided: "Or profits not to exceed 8 per centum and a reasonable allowance for general expenses (not to exceed 8 per centum) on purchased goods."

It will be noted the language of section 402 (d) is identical with that just quoted, but that in section 402 (d) the parentheses are omitted and in lieu of the first parenthesis a comma is found, while no punctuation mark is given in lieu of the last parenthesis omitted. It is argued this evidenced a congressional intent to give this language the meaning that a reasonable allowance might thereafter be made for general expenses incurred upon consigned goods, not limited by a maximum of 8 per cent, and that a similar allowance might be made upon purchased goods, limited, however, to a maximum of 8 per centum.

We can not agree with this contention. While it is true that we have at times paid regard to changes in punctuation in construing

particular provisions of tariff acts, it has always been where it was obvious from the context and the particular matters under consideration that such a construction was essential. *United States* v. *Innes et al.*, 7 Ct. Cust. Appls. 3. In the case at bar we do not find any such compelling circumstances. As was said in *Hecht* v. *United States*, 5 Ct. Cust. Appls. 261, where a similar contention was made, if Congress had intended to make such a radical and fundamental change of policy as is here insisted upon, it would not have "manifested its intention in that behalf by the poor expedient of a comma." Language might easily have been used by Congress to manifest such an important change. Grammatically, a parenthesis and a comma may be used interchangeably. It is reasonable to assume that when Congress, in rewriting this section, omitted the parentheses and substituted one comma, that it was by inadvertence and not by intention that the last comma was omitted.

The three items last mentioned, therefore, were properly disallowed by both the single general appraiser and by the board.

The items of store expenses, $0.02711, and profit, $0.01223, per pound, as claimed by the importer, were allowed as proper deductions by the single general appraiser at $0.0104 and $0.0113 per pound, respectively. The Government did not apply for a review of these items by the Board of General Appraisers. It follows, therefore, from the construction we have adopted in this opinion, that the board erred in disallowing these items. In so holding, it must be understood that we are not passing upon the merits of the allowance of such items. In fact, it may well be gathered from what we have heretofore said that were the matter properly before us, we would not be inclined to find such items to be proper deductions. But the single general appraiser found such items to be properly allowable in the amounts heretofore stated. The Government may not rest content with such a finding and then, when the importer seeks a review, ask to have the items completely eliminated from the ascertainment of United States value; in other words, obtain a judgment more favorable than it had in the court below.

Finally, the item of duty $0.02596 as claimed, as allowed by the single general appraiser, $0.0317, and as found by the board, $0.02596, per pound, is a proper deduction, and was properly fixed, under the facts shown by the record, at the amount found by the board.

It follows, therefore, that in fixing the dutiable value of this importation, there must be deducted from the conceded United States selling price, $0.165 per pound, the following items: Freight, $0.00853, containers, $0.01255, store expenses, $0.0104, profit, $0.0113, and duty $0.02596, per pound, or a total deduction, per pound, of $0.06874, thus leaving a net dutiable value of $0.09626 per pound.

The judgment of the Board of General Appraisers is reversed and the cause remanded for proceedings in conformity with this opinion. *Reversed* and *remanded.*