The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* FUCHS & LANG MANUFACTURING Co. (No. 3304)[1]

[1] T. D. 44760

United States Court of Customs and Patent Appeals, March 25, 1931

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument October 10, 1930, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

On February 3, 1927, the Fuchs & Lang Manufacturing Co., the appellee in the case at bar, by entry 856683, entered certain rubber blankets for consumption at the port of New York. The local appraiser advanced the entered value to make dutiable value, the appraisement being made on May 20, 1927. On May 23, 1927, the importer appealed to reappraisement. On May 14, 1928, Justice McClelland of the United States Customs Court, having heard said appeal, found the dutiable values to be the invoice values, and entered judgment accordingly. No further appeal was prayed.

On September 28, 1927, entry 765419, of certain rubber blankets, was made by appellee at the same port, and additions to the invoice value were made by the entrant, with this notation upon the entry: "add to M. M. VAL as per test case pending E 856683." On May 24, 1928, these goods were appraised by the local appraiser at their entered value. On May 26, 1928, the importer appealed to reappraisement, and on May 29, 1929, Justice McClelland found the dutiable value to be the invoice value. The Government appealed, and, upon review, the Third Division of the United States Customs Court affirmed the judgment of Justice McClelland.

On November 16, 1927, the appellee, by entry 805565, entered certain other rubber blankets at the same port, making in the amended entry the same duress statement found in entry 765419, hereinbefore quoted. On May 18, 1928, the local appraiser appraised the goods at their entered value. On May 26, 1928, the importer appealed to reappraisement. In the Customs Court, this appeal was consolidated and heard conjointly with entry 765419, aforesaid, and the same judgments were rendered by both the single justice and the Third Division as in the entry 765419. The Government has appealed from the judgment of the Third Division in these consolidated cases.

From these facts it appears that at the time the duress entries were made in this case, a case was then pending on appeal for reappraisement, which the importer claimed was a similar case, and to which he referred in his two entries. It also appears that final appraisement by the local appraiser was not made in the duress cases until the test case, pending on appeal for reappraisement, had been finally adjudicated.

When the case at bar came on to be heard before the single justice on reappraisement, the importer made a motion to incorporate into the record the record in the test case pertaining to said entry 856683, denominated as reappraisements 73909-A, etc., and also a record in another reappraisement case, 78349-A, this latter record being offered not on the question of dutiable value, but on the question of the identity of the country of exportation. The Government objected to the introduction of these records, on the grounds of remoteness of the respective importations. Thereupon the records were admitted, together with the affidavit of one Frank Carr and the reports of two Government special agents, exhibits in said reappraisements 73909-A, etc. No further evidence was introduced.

The provision of the Tariff Act of 1922, under which these so-called duress entries were made, is that portion of section 489 which reads as follows:

SEC. 489. * * * Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement.

This provision of law is evidently intended to accomplish at least two useful purposes: First, to permit an importer to make succeeding importations under one claim of dutiable value; and, second, to prevent unnecessary litigation. The provision is an act of grace,

however, and confers no rights upon the importer except when he complies strictly with its provisions and thus brings himself under its protection. *Zinberg* v. *United States*, 16 Ct. Cust. Appls. 268, T. D. 42870.

We first observed that there must be a test case pending on appeal for reappraisement or re-reappraisement at the time the duress entry is made, which is claimed by the importer to be a similar case. When such an entry is made under this statute, the local appraiser must, as he did in the case at bar, suspend his appraisement therein until the final decision of the test case on reappraisement or re-reappraisement.

This statute, to be workable and to effectuate the purposes for which it was enacted, must be thus administered. Otherwise, an importer will find himself embroiled in litigation in one or many similar cases in which he has made the statutory duress certificate and may find such cases have proceeded to final judgment, while the original test case is yet pending on appeal for reappraisement or re-reappraisement. In such case he is entirely deprived of the privilege which the statute was intended to give him. The law has thus become without effect through no fault of his.

The second observation suggested by the provision of law before us is that the cases—that is, the test case and the duress case—must be *similar*. We went into that matter quite extensively in *Zinbreg* v. *United States, supra*. We there said:

* * * Surely, it must have had in mind that "duress" entries should cover only such merchandise as was comparable in value to that involved in the "cases then pending on appeal"; and that the issues raised by the certificate in the "duress" entries would be the same as those in the pending cases. If this is true, then, of course, it was not within the contemplation of the Congress that merchandise of a higher value—due to an advancing market—and, therefore, of a different status than that involved in "pending cases," could be brought within the "duress" entry provisions of the statute. * * *

Such similarity need not necessarily extend to every item of the invoice or to every dutiable charge, but some item or items of the invoice must be similar in the test and duress cases, or some item of the dutiable value in both cases must be similar. To illustrate, in *Beaver Products Co.* v. *United States*, 17 C. C. P. A. (Customs) 434, T. D. 43878, the only item involved was the inclusion of a Canadian sales tax of 5 per centum in the dutiable value. This feature was common to both the test and the duress case. We there said:

In the decision of this issue much depends, we think, on what Congress meant by the phrase "in similar cases then pending on appeal." The same section indicates that the importer might win his pending appeal "in part." The Tariff Act of 1913 did not provide for a duress entrant winning his case "in part." This fact is not without significance. "Similar cases" does not mean identical cases, or else the statute would only have provided for winning them "wholly."

The test case at bar was won wholly and was similar in every particular, but we must also suppose that Congress had in mind cases which were only "in part" similar. If this is true, then the 5 per centum tax question common to them both may be effectively adjudicated in the test case. The fact that some cases may contain elements of similarity like the case at bar, and also elements of dissimilarity, does not militate against the conclusion herein reached.

The same situation would arise where one or more items of the goods named in importer's duress entry were therein designated as similar cases to items pending on appeal to reappraisement in the test case. In other words, the importer is entitled to have the final appraisement in the test case applied to his duress entry "wholly or in part," so long as the cases are *similar*.

In the *Zinberg* case, *supra*, it was held that the duress-entry provisions of section 489 were intended to cover only such merchandise as was comparable in value to that involved in the "cases then pending on appeal," and that, in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement, the statute required that merchandise covered by duress entries should be entered at the appraised value of the merchandise in the pending case. However, in a duress entry where merchandise, otherwise similar, had advanced or decreased in value, but in which an issue is involved concerning one or more so-called independent items, such as sales and other taxes, charges, etc., which is or are common to both the test case and the duress entry, such issue shall be determined in the test case, regardless of whether the entered value in the duress entry is higher or lower than the appraised value of the merchandise in the test case; all other issues of value to be determined as otherwise provided by law.

When the test case has been adjudicated, the parties are entitled to their day in court on the issue of the similarity of the test and duress cases. The mere fact that the importer has certified, under said section 489, that the duress and test cases are similar, is not conclusive upon and does not bind the collector in the duress case. If, in his judgment, the cases are not similar, he may, and it is his duty to, cause the goods in the duress entry to be appraised at what is found to be their dutiable value. Then the issue is made up between the claim of the importer that the cases are similar and the claim of the Government that they are not. In order that the importer shall have an adjudication on this question, he should therefore appeal for reappraisement and re-reappraisement, if the latter step is necessary. The same suggestions likewise apply to the Government, where the finding of the local appraiser is adverse to it.

Under the reappraisement provisions of the Tariff Act of 1922, section 501, this issue, under the facts of this case, may be disposed of in the reappraisement proceedings. We have had occasion, in many instances, to call attention to the fact that, under this section

of the statute, all questions pertaining to the correctness of the appraisement and its validity may be litigated in such proceedings. *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T. D. 40944; *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318; *United States* v. *Central Vermont Railway Co.*, 17 C. C. P. A. (Customs) 166, T. D. 43474; *United States* v. *Porto Rico Coal Co.*, 17 C. C. P. A. (Customs) 288, T. D. 43716.

These preliminary observations bring us to the next question in the case at bar: Were the duress and test cases similar, wholly or in part? As we have hereinbefore intimated, the mere introduction of the record in the test case in evidence did not make it mandatory upon the court in the duress case to follow it in fixing dutiable value in the latter case. The cases may, or may not, have been similar. The local appraiser, by his appraisement in the duress cases, *prima facie* established, in legal effect, that the cases were not similar. Therefore, when the reappraisement matter in the duress cases was heard before the single justice, the burden was upon the importer to offer some evidence showing the similarity of the cases. If there be no such evidence in the record, then the decision in the test case does not apply, and the dutiable value must be determined from the facts appearing of record, without reference to the test case. If there be such evidence, then, the appraisement matter having been heard on review by the Third Division of the Customs Court, and having been decided by it adversely to the Government, this court will examine the record to observe whether there is therein substantial evidence to support the findings of the Third Division, and if there be such substantial evidence it will not be disturbed.

The goods invoiced in the test case were ordered from P. B. Cow & Co. (Ltd.) of London, England, on May 11, 1926, and were shipped from Havre, France, on January 25, 1927. They consisted of two cases of rubber printers' blankets, one case containing "4 rolls of 24 yds. each—96 yds. 36 x 3 ply P. B. C. special finish blanket—cotton 18.62%, rubber 81.38%." The other case contained "2 rolls of 24 yds. each—48 yds. 44 x 3 ply P. B. C. regular finish blanket—cotton 19.10%, rubber 80.90%."

Duress entry 765419 covered three items of goods invoiced as "4 rolls of 24 yds. ea.;—96 yds. of 32 x 3 ply P. B. C. blkt. spcl. fin.; cotton 22.23, rubber 77.77"; "4 rolls of 24 yds. ea.;—96 yds. of 32 x 3 ply P. B. C. blkt. specl.; fin.; cotton 22.23, rubber 77.77"; "4 rolls of 24 yds. ea.;—96 yds. of 30 x 3 ply P. B. C. blkt. spec.; fin.;—cotton 22.27, rubber 77.73." These goods were ordered from P. B. Cow & Co. (Ltd.) at London, on September 9, 1927, and were shipped from Havre on September 27, 1927.

Duress entry 805565 covered four items of goods invoiced as "4 rolls 24 yds.—96 yds. 30 x 3 ply P. B. C. blkt. spcl. finish, cotton

22.79, rubber 77.21"; "2 rolls 24 yds.—48 yards 44 x 3 ply P. B. C. blkt. reg.; finish, cotton 24.33, rubber 75.67;" "6 pcs. 50" x 41"— 6⅝ yds. of 50" x 6 ply blkt. S. W. quality; cotton 24.98; rubber 75.02"; "2 rolls 24 yards—48 yards 44 x 3 ply blkt. reg.; finish." These goods were ordered from said Cow & Co. on September 9, 1927, and were shipped from Havre on November 16, 1928.

A reading of the affidavit of Frank Carr, executed November 25, 1927, hereinbefore referred to, shows that he is a director of P. B. Cow & Co. (Ltd.), which manufactured and shipped the goods to appellee in both the test and duress cases. This affidavit was offered in evidence by the importer. By this affidavit it appears that "rubber printers' blankets in all material respects the same as those shipped to the Fuchs & Lang Manufacturing Co.," in the period from January 1, 1926, to January 1, 1927, were sold at certain prices which the affiant then gives. Further, he states that his company, on and after January 1, 1927, "reduced their list prices for sales" to certain other prices which are then enumerated. Following these statements is the following:

* * * that during the period since January 1, 1926, up to the present blankets in all material respects the same as those shipped to Fuchs & Lang Manufacturing Co. were sold by us in the wholesale markets of Great Britain to three classes of buyers—(1) those that buy in short lengths of from one to three yards, to whom is given no discount from the list prices but to whom is accorded a cash discount of 2½%, (2) those that buy in twelve-yard lengths at odd times and but a few lengths per year, to whom are allowed a trade discount of 10% from said list price and, in addition thereto, a cash discount of 2½%, (3) those buying in twelve-yard lengths or over but in larger quantities, to whom are accorded special reduced prices, as follows:

|  | Special reduced prices— | |
| --- | --- | --- |
|  | From 1/1/26 to 2/9/26 | From 2/9/26 to date |
|  | Per yard | Per yard |
| 30 x 3 ply | 20/6 | 19/9 |
| 32 x 3 ply | 22/3 | 21/6 |
| 36 x 3 ply | 23/9 | 22/9 |
| 44 x 3 ply | 28/3 | 27/3 |

and a cash discount of 2½%.

The purport of this affidavit is that the goods shipped to the appellee by Cow & Co., covering the period including the test and duress entries, were similar, and that the prices were the same during the whole of the period. This is true, except in the case of the 50 by 6 blankets, as to the price of which the affidavit is silent.

The Government offered in evidence two reports of special agent Turrill, one dated December 9, 1926, and the other April 21, 1927,

both being dated several months before the goods in either duress entry were ordered or shipped. An examination of these reports discloses that there is nothing contained therein which throws any light upon the similarity of the test and duress cases. Being made at times long prior to the duress entries, the report deals entirely with the market values of these goods in England during the period of investigation and up until April 21, 1927.

There being no further evidence in the record we think it fairly appears that, as to any item included within both the test and duress cases, the importer has established that his test and duress cases are similar. This includes but one item, the 44 by 3 ply blankets, invoiced in both the test case and duress entry, 805565. Upon this item the importer is entitled to the final appraised value fixed in the test case.

The remaining items, however, are blankets of different sizes than those in the test case, and have different foreign market values. We can not, therefore, hold that they present similar cases to the test case. As we observed in the *Zinberg* case, *supra*, the goods in the test and duress cases must be "comparable in value," or, as we observed in the *Beaver Products* case, *supra*, there must be some element of similarity for appraisement purposes. This rule does not permit of any ascertainment of similarity by a process of comparison and computation of values. The dutiable values, therefore, of the remaining items must be fixed by the facts appearing of record in this case. As we have already noted, the importer made additions to his invoice values in his entries, in all such items, and, therefore, his entered values, being higher than the final appraised values, must be taken as the dutiable values of such items. (Sec. 489, *supra*.)

The Government also contends that amended rule 24 of the United States Customs Court, permitting the introduction of records in former issues before that court involving the same state of facts, is invalid. This argument is made in support of its contention that the record in the test case should not have been permitted to go in evidence in the case at bar. We do not find it necessary to pass now upon the validity of that rule; this may be done when the issue is properly presented here. It is sufficient to observe now that, irrespective of rule 24, the record in the test case was properly received in evidence in the case at bar. It was pertinent to the issue of the similarity of the test and duress cases. There was no error in this respect.

The judgment of the United States Customs Court, Third Division, is, therefore, *affirmed* as to the appraisement of the items of 44 by 3 ply blankets, as they appear in said entry 805,565. It is *reversed* as to all other items, and the cause is *remanded* with directions to proceed in conformity with this opinion.

HATFIELD and LENROOT, Judges, specially concurring: Although we adhere to the views expressed in the dissenting opinion in the case of *Beaver Products Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 434, T. D. 43878, as to the proper construction of the so-called duress-entry provisions of section 489 of the Tariff Act of 1922, we deem it proper to consider that issue as settled by the decision in the cited case, as modified by the majority opinion in the case at bar.

So far as the majority opinion modifies the decision in the *Beaver Products Co.* case, *supra*, with the exception of the holding that appraisement in duress entries must be suspended until a final decision has been rendered in the pending or test case, we are in hearty accord with it. Having departed in that decision from the plain mandates of section 489, or so it seemed to us, in order to save importers, in some instances, from an alleged multiplicity of appeals in duress-entry cases, it was not an easy matter to devise an understandable and practical method of procedure in such cases. Under the circumstances, we think the majority of the court has done very well. However, the net result is that, instead of adding to the statutory benefits already conferred upon importers, the court has, as a matter of fact, deprived importers of important rights and privileges, changed the long-established procedure in duress cases, and added to the inherent difficulties in the administration of the law.

The opinion of the majority holds that in all duress entries the appraiser must suspend his appraisement of the merchandise covered thereby until the "final decision of the test case on reappraisement or re-reappraisement." This part of the decision is unqualified and relates to all merchandise covered by duress entries without regard to the precise issues involved. The appraisement by the local appraiser of merchandise covered by duress entries will be delayed, in many cases for years, and in cases where the appraiser holds that the merchandise is not comparable in value to that in the test case and in appeals by the collector, the final appraised value will of necessity remain undetermined for many years subsequent to the decision in the test case.

The loss occasioned as a consequence of the almost interminable delay in the ascertainment of the final appraised value will compel importers to forego the privileges intended to be conferred by the duress-entry provisions of the law except where the appraised values in pending cases are greatly in excess of the *per se* entered values. In other words, importers will be compelled to accept the consequent losses of the long delay in the ascertainment of the dutiable value of their merchandise or accept the losses the duress-entry provisions were intended to prevent. As a result of the holding of the majority

of the court, importers have gained little and lost much. Moreover, the prohibition against the prompt appraisement of merchandise in duress entries will add to the difficulties in the administration of the law, and as a consequence intelligent action by appraising officials may in many cases be impossible.

The difficulties attending the appraisement of imported merchandise have been sufficiently great under the old and well-established procedure, but they will be infinitely greater if customs officials are required to delay official action for a period of years after the date of the exportation of such merchandise.

We are of opinion that there is no statutory authority for requiring delay in the appraisement of imported merchandise covered by duress entries. Certainly there is nothing in the provisions of sections 489, 501, 503, or in any other section of the Tariff Act of 1922, to remotely suggest that the Congress ever contemplated requiring a method of procedure so unwise. Accordingly, we have felt constrained to give expression to these dissenting views, although we agree that the conclusion reached by the majority is in entire harmony with the principles announced in the majority opinion.