UNITED STATES *v.* ALATARY MICA CO. (No. 3394)[1]

United States Court of Customs and Patent Appeals, April 27, 1931

*Charles D. Lawrence,* Assistant Attorney General (*John F. Kavanagh* and *James R. Ryan,* special attorneys, of counsel), for the United States.
*Lamb & Lerch* (*John G. Lerch* of counsel) for appellee.

[Oral argument April 3, 1931, by Mr. Ryan and Mr. Lerch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this reappraisement appeal consists of mica shipped from France and produced in Madagascar.

---

[1] T. D. 44871.

The case was before this court in *United States* v. *Alatary Mica Co.*, 17 C. C. P. A. (Customs) 284, T. D. 43692. The same division of the United States Customs Court in that case affirmed the judgment of the single reappraising justice, who had found that the entered value "represented the export and foreign value of this merchandise on the date of shipment." Upon review of the decision of the United States Customs Court in *United States* v. *Alatary Mica Co.*, *supra*, this court reversed the judgment and remanded the case with instructions to make findings of fact upon two questions: (1) Whether the consignor of the merchandise was the manufacturer or producer thereof; (2) the facts upon which it based its conclusion that the entered value as found by the lower court represented the export and foreign value of the merchandise on the date of shipment.

In attempted compliance with the mandate the lower court found that "the party named in the invoice was the agent of the shipper of the merchandise, who was the manufacturer," and the evidence upon which it based its finding of said fact was set out in its decision.

In finding the facts requested under (2) the lower court found in substance that the value of first-class mica was 56 francs per kilo and that the mica in question, being ribbed, was worth at least 20 per centum less, which it found to be the invoice value, and that the invoice value was not higher than the foreign or export value of that class of mica.

The Government here makes two contentions: First, that under section 481, paragraph (a), subdivision (6), of the Tariff Act of 1922, and the customs regulations made pursuant thereto, "if the merchandise is shipped otherwise than in pursuance of a purchase [etc.]," certain facts must be stated in the invoice, which are not contained in the invoice in the case at bar. The Government contends that the evidence shows that the shipper was not the manufacturer of the mica within the meaning of paragraph (b) of said section 481, and, not having complied with the statutory requirements in invoicing the goods, the importer's appeal to reappraisement was invalid under the provisions of section 501 of the Tariff Act of 1922. In this court and in the court below the Government, basing its contention upon the alleged invalid invoice and the invalid appeal resulting therefrom, urges that the trial court had no jurisdiction in the reappraisement case and that it should have dismissed the appeal. It further contends that since the invoice was invalid it can have no evidentiary value in ascertaining dutiable value.

The second contention of the Government is that there is no substantial evidence to support the finding of facts with respect to the value of the merchandise. In the Government's brief it states:

The Government further contends that the importer utterly failed to offer any evidence as to the value of the merchandise involved to take the place of the value found by the local appraiser; * * *

The claim by the importer that the imported merchandise was appraised as first quality mica is unfounded.

At the outset of this case we are confronted with a question that has been, to say the least, very troublesome. In the lower court's judgment in *United States* v. *Alatary Mica Co., supra*, the judgment of the single appraising justice was affirmed. Upon appeal we *reversed* the judgment and remanded the cause for finding of facts. As stated above the court found the facts but in its decision made no new decree or order for judgment. We find in the record what is styled a judgment order, and in it is the following:

\* \* \* now, in conformity with said decision;

It is hereby ordered, adjudged, and decreed that the dutiable value of the merchandise in question is the value indicated in the court's decision hereto attached and made a part of this order.

This, of course, is a finding of value.

Section 501 of the Tariff Act of 1922 provides for—

\* \* \* a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall *affirm, reverse, or modify* the decision of the general appraiser *or remand* the case to the general appraiser for further proceedings, and shall state *its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor.* \* \* \* [Italics ours.]

In *United States* v. *Alatary Mica Co., supra*, the lower court complied with a part of the mandate of the statute and affirmed the decision of the single reappraising justice. Its judgment in that case was reversed, since it failed to find the facts required. In its second so-called judgment order we can not see how the lower court has complied with the statutory requirement that it "affirm, reverse, or modify the decision of the general appraiser or remand the case," unless finding the same value as that found by the single reappraising justice, which finding is made upon the same facts and probably for the same reasons, may be regarded as an affirmance of the judgment of the single reappraising justice. It is unfortunate that this irregularity should have occurred. It is, therefore, with considerable reluctance, and substantial doubt as to the propriety of our action, that we hold that the judgment of the lower court in this case amounts to an affirmance of the decision of the single reappraising justice. The case has already been remanded and great delay occasioned, the entry having been made nearly six years ago. That we have authority to review questions raised in an appeal from such a judgment, may be questioned with considerable plausibility, but in view of our conclusions hereinafter reached and for the purposes of this case only we hold that the judgment of the court below is an affirmance of the judgment of the single reappraising justice.

We come now to the consideration of the two questions in controversy. It is not necessary for us to pass upon the first question raised, since the judgment of the lower court must be reversed, irrespective of any consideration raised by the first question.

The second question is: Is there any substantial evidence of value of the merchandise in the record which supports the judgment of the court below and the single reappraising justice? In our opinion, if there is such evidence it must be found outside of the invoice. Regardless of the character of the invoice and whether it does or does not comply with the statute and customs regulations, it is no evidence of any sale price or any statutory dutiable value, since it is clear to us that the goods were not sold but were consigned for sale.

The record seems to be clear and undisputed that the transaction was not a sale but a consigned shipment, and the shipper so declared at the time of entry. Mr. Alatary, the importer, and president of the Alatary Mica Co., appellee, was recalled to the witness stand for the purpose of changing his testimony and testified as follows:·

Q. Mr. Alatary, you testified this morning that you did not handle this transaction, that it was done during your absence, that you believed it was purchased, and that you believed you paid the price that is stated on that invoice. Do you want to correct any part of that statement?—A. Yes. *The goods have been sent to me on consignment to be sold.*

Mr. KAVANAGH. To be sold? And have you sold any of it?

The WITNESS. No.

Mr. KAVANAGH. So that all the rest of your testimony stands?

The WITNESS. Yes.

Judge FISCHER. It was a consigned shipment, not a purchase.

The WITNESS. I have been away for a year to Madagascar.

Judge FISCHER. Well, that explains that. * * * [Italics ours.]

We have examined the record with care and have noted the findings of the court below and the evidence it refers to as upholding its finding of value, .and we have found no substantial evidence in the record which supports its decision as to the value of the merchandise or the value found by the single reappraising justice.

It will be noted that the court below in its decision says:

As to the appellate court's second question: The evidence discloses that the values stated on the invoice were the prices paid for the mica by the importer.

As found previously by this court, this mica was not first grade. First-grade mica is practically flat, or without ribs. It is shown by the testimony that this mica is ribbed to the extent of 15 to 35 per centum. All who are familiar with the subject know that ribbed mica can not be used until flattened or straightened out. One way to do this is by cutting out the ribbed portion and using the remainder, which then becomes first-class mica; but the cost of placing mica in first-class condition should of course be deducted from the original contract price.

· We are satisfied that the value of this mica was at least 20 per centum below the value of mica that was not ribbed.

What was the value of mica that was not ribbed? The Government found it to be 56 francs per kilo. We have a right to take that as a very strong circumstance to indicate what this mica was selling for in Paris at the time of exportation. In fact, we must believe, if the Government thought this was first-class mica it was necessary to give it a first-class price, and that, therefore, it was worth at least 56 francs per kilo.

All the testimony establishes that if there is this ratio of poor mica in a shipment, the value of first-class mica would not be paid therefor.

Therefore we find on this record, limited though it is, that the value of first-class mica was 56 francs per kilo and that the mica in question was worth at least 20 per centum less, or the invoice value. The value of such quality is not only established by the testimony but particularly by the documentary evidence of the plaintiff himself, for on page 57 of the record is a letter dated November 11, 1925, from the importer, wherein the consignee was informed that the mica could not be used and was of no value to customers, "because it is all warped."

We therefore find: First, that the value of this mica was as stated on the invoice, which is not higher than the foreign or export value of this class of mica; second, that the consignor acted in the capacity of sales agent in shipping the merchandise to the importer and that in fact he was a member of the producing society, who was in fact the producer.

The court, as we view it, proceeded to appraise the goods—to find value. It did not find or point out any evidence in the record below which showed a value authorized by the statute. The court proceeded on the theory that the Government found first-class mica to be worth 56 francs per kilo, and states that this is an indication that the first-class mica was selling on the Paris market at the time of the exportation at that price. There is no substantial evidence in the record to show that the appraiser regarded the importation as first-class mica or that he considered 56 francs per kilo the proper dutiable value of first-class mica. But even if he did it is no proof of the export or foreign values to take a certain grade of mica and estimate the amount of inferior mica contained therein and then arrive at the value of the same by deducting a certain percentage from the value of first-grade mica. This is not evidence of sales or offers of sales in the country of export. Foreign or export value may not be ascertained in this manner. *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714. If there were sales or offers of sales of this kind of mica in the foreign country for home consumption or for export, conforming to the statutory requirements, the price of such sales or offers should have been proven. The statute provides that in the absence of such sales or offers, dutiable value shall be obtained in another manner. There is no contention that there was any attempt to prove any other value than foreign or export value, and the record is barren of any evidence of any sale or offer of sale conforming to the statutory requirements.

At the request of the court, counsel for appellee has carefully gone over the record and filed a supplemental brief in which he

has attempted to point out the evidence in the record which is relied upon to support the decision of the court below. He says:

\* \* \* The practice in the customs courts is not unlike that of the ordinary courts where the appraisal of land is in question. In order to find the value of a certain piece of land in a block in which there has been no recent sale, the court must resort to the opinion of experts based upon their familiarity with the various factors and the knowledge of the last preceding sale of adjacent property. The tests which are applied in that instance form the basis of the testimony in the reviewing tribunal as well as the facts upon which a judgment is rendered. In the United States Customs Court in the reappraisement branch the jurisdiction of the judges of this court is not unlike that of the illustration just given. They sit as judge and jury to determine the value of the merchandise.

In a case of the kind at bar the statute requires that the United States Customs Court shall "affirm, reverse, or modify \* . \* \* or remand." This court, in *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318, held that, in such a proceeding, the United States Customs Court was not a trier of the case *de novo* but sat as an appellate tribunal. As such a court it was its duty to pass upon the probative value of evidence of the character pointed out in appellee's supplemental brief the following of which is illustrative:

Q. If 35 or 50 per cent of a shipment contained merchandise of that character, what relation would the value of that bear to perfectly flat, first-quality merchandise? \* \* \*—A. Well, I would reach a price first by deducting 50 per cent and then adding the value of the ribbed 50 per cent portion, which would be useless by recutting it. Now, ordinarily, out of the 50 per cent ribbed portion you ought to be able to obtain about 30 per cent of No. 2 and 20 per cent of No. 3. I have to get a pencil. \* \* \* About 65 per cent, I should judge. [R. 41, 42.]

\*        \*        \*        \*        \*        \*        \*

A. If it consisted of 50 per cent of that character, if in No. 4, in my estimation it would depreciate about 80 per cent of the value which the mica would have if it were all perfectly flat.

Q. Now, if there were 35 per cent of the No. 4, the same quality of the samples which you have just looked at, what relation to the value of perfect goods would it be?—A. Well, it is a matter of mathematical computation.

Q. But would it be more than 80 per cent?—A. No; less than 80 per cent. [R. 42.]

That such evidence is no substantial evidence, standing by itself, of the foreign or export value as defined by the statute, is too obvious to require discussion. It is not claimed to be evidence of any other kind of statutory dutiable value. This kind of evidence might be important for the court's consideration in passing upon the weight of other evidence.

There is, therefore, in the record, no substantial evidence to support the judgment of the court below, and its judgment must be *reversed* and the cause *remanded* for further proceedings not inconsistent with the views herein expressed.