## UNITED STATES v. K. K. IMPORTING CORP.

**No. 5609**—Invoice dated La Chaux De Fonds, Switzerland, July 15, 1938.
  Entered at New York, N. Y., August 1, 1938.
  Entry No. 710755.

### Third Division, Appellate Term

(Decided April 1, 1942)

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Daniel I. Auster*, special attorneys), for the appellant.
*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the appellee.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is an application for review of the decision of the trial judge in *United States* v. *K. K. Importing Corp.*, Reap. Dec.

5309. The merchandise in issue consists of 50 gross of watch hands exported from Switzerland on July 18, 1938, and entered at 7 Swiss francs per gross, plus 10 per centum which is described on the invoice as "Hausse," less 25 per centum, plus cost of cards to which the watch hands were attached.

The evidence produced by the plaintiff below consists of the testimony of the customs examiner, Mr. Abraham Straus, three reports of United States Government agents abroad, which were received in evidence and marked exhibits 1, 2, and 3, and a sample from the importation, which was received in evidence and marked exhibit 4. Counsel for the importer made the following statement at the trial:

> If the court please, I would like the record to show in this case we have no defense. We have made repeated efforts to communicate with this importer and discuss this case, and they have absolutely refused to cooperate or come down to help us in any way. We have been present here this morning to protect their interests, and we rest.

Exhibit 1 is a report of Treasury Representative Charles Kruszewski, No. 670–204, dated July 13, 1939, in which it is stated that the Treasury representative visited the office of Fabrique d'Aiguilles de Montres "LeSucces," the shipper of the merchandise, on June 11, 1939, and interviewed the manager, Mr. Junod, Jr., who gave him information which was verified from the regular books of account and other records of the concern; that the only relationship between the importer and the manufacturer was that of buyer and seller; that the manufacturer was free to offer and sell to anyone anywhere at the tariff prices and conditions fixed by the "Groupement des Fabricants d'Aiguilles de Montres" (Group of Watch Hand Factories), La Chaux-de-Fonds, Switzerland; that the importer could sell the watch hands as he desired; that the payment for the shipment in this case was at the invoice price; that prices for exportation were fixed by the "Groupement des Fabricants d'Aiguilles de Montres" published in booklet form, a copy of which was attached to the report and marked exhibit A, which went into effect on January 25, 1937, and was still in force; that on account of the devaluation of the Swiss franc, effective April 11, 1938, all prices shown in this tariff are increased by 10 per centum, this increase being called "hausse"; that for series of the same number, of a same type, of a same color or of a same assortment, there is the following quantitative discounts:

| | | | |
|---|---|---|---|
| 5 gross | 3% | 100 gross | 20% |
| 10 " | 5% | 500 " | 22% |
| 25 " | 10% | 1,000 " | 25% |
| 50 " | 15% | | |

The report states further that since the importer—K. K. Importing Corp.—placed an order for 100 gross, the manufacturer granted him a quantity discount of 20 per centum.

It may be well to note at this point that this 20 per centum discount was deducted on the invoice but it was not deducted on the amended entry and therefore is not involved so far as the appraised value is concerned because the merchandise was appraised as entered.

The report states further that there is a further wholesale discount depending on the status of the purchaser in the foreign countries, including those in the United States and wholesalers located in Switzerland exporting to foreign countries, consisting of five groups which receive discounts of 5, 10, 15, 20, and 25 per centum; that the K. K. Importing Corp. in New York, at the time of the shipment, was listed under the group which was authorized to receive the 25 per centum, which is the so-called wholesale discount; that such 25 per centum discount is described on the commercial invoice in this case as "25% remises de grossistes" and was duly deducted; that subsequently the firm of K. K. Importing Corp. was stricken from the list of firms having the benefit of the wholesale rebate. The report states further:

> The Secretary furthermore pointed out that the delivery of the kind of watch hands should be closely watched. Some firms invoice one kind of watch hands with a higher tariff value.

The Treasury representative attached to the report a photostat of a chart showing the shapes of the different watch hands. This chart was marked exhibit B but he notes that the numbers shown in this chart do not correspond with those in the tariffs.

There is also attached to the report an envelope, marked C, containing a card holding three samples of watch hands said to be 509 C as invoiced to the K. K. Importing Corp. Opposite one of these samples is the number 112 and the others are marked with the number 509.

The report states further that there is a 5 per centum cash discount, a 3 per centum discount within 30 days, and a 2 per centum discount within 60 days and that the importer in this case deducted 5 per centum cash discount upon payment. However, the invoice and entry do not show the deduction of the 5 per centum cash discount.

As to sales in Switzerland, the report states:

> For sales in Switzerland proper there is another tariff applied, called "tarif minimum des aiguilles de fabrication" (minimum watch hand tariff for fabrication). A copy of this tariff is forwarded herewith marked exhibit "D". While technically these watch hands for fabrication are identical with those made for repairs, manufacturer and group secretary pointed out that there is a difference in marketing and selection. Watch hands for "repair" are the regular run of production without selection, while watch hands for "fabrication" are carefully selected for a definite type of watch to be made. Watch hands for "fabrication" are not sold for resale, but are sold to factories making watches. Hence there are no trade or quantity discounts, but merely graduated prices according to the quantities purchased as shown in exhibit "D". Watch hand No. 509 C for "repairs" is identical in construction with watch hand No. 112 for "fabrication". (See Exhibit C for both samples, Nos. 509 C and 112, respectively.)

. Effective April 11, 1939 prices shown in exhibit "D" were increased by adding a so-called "hausse" of 4%.

The Treasury representative reported nine sales of No. 112 in Switzerland at various prices.

The exhibits A, B, and D are in a language other than English.

Exhibit 2 is a report of Supervising Treasury Attaché Bernard Wait, ·dated October 11, 1939, forwarding a photostatic copy of a letter from Treasury Representative Charles Kruszewski in which it is stated that there was a typographical error in report 670–204 in that the effective date of the 4 per centum "hausse" addition should be October 11, 1938, instead of 1939. He stated also—

I actually visited the Secretary of the "Groupement des Fabricants d'Aiguilles de Montres" (Group of Watch Hand Factories) at La Chaux de Fonds on the same day that I visited the manufacturer Fabrique d'Aiguilles de Montres "Le Succes" (J. Junod) i. e. June 13, 1939 and obtained the information incorporated in Paris report 670/204.

Exhibit 3, No. 670/180, dated August 19, 1940, is another report of the supervising Treasury attaché which merely forwards a copy of a letter he states he wrote to the "Swiss Watch Chamber at La Chaux de Fonds." In this letter, which appears to be addressed to "Monsieur Amez-Dros, Secretaire General, Chambre Suisse de l'Horlogerie," it appears that the supervising Treasury attaché forwarded some samples of watch hands received from the United States customs authorities said to be shipped by J. Junod, La Chaux de Fonds. It was requested in the letter that an inquiry be made to ascertain the name of the manufacturer and the classification of the watch hands. There is also attached to the report a photostat of the reply to that letter and a copy of an English translation thereof in which it is stated:

. . We examined the file which you sent us and which we are returning herewith.

A technical examination of the watch hands referred to us has shown that the watch hands fall within the following category: Kind "Indes", quality B, tempered, rounded, polished heads; they must be delivered at the minimum under No. 524 at the rate of Frs. 10.50 plus general increase of 10%. Besides, if these hands are required with exact gauges, as it would seem to appear from the card to which the samples are attached, which bears the words "gauged holes", there should be added an increase of Frs. 2.00 per gross for special gauges.

On the other hand, it is impossible for us to state whether these hands come from the firm Junod of our city in view of the fact that, generally speaking, the watch hands from one manufacturer cannot be distinguished from those of another manufacturer. Even a clever expert cannot tell.

There is also attached to this exhibit an envelope containing four watch hands.

The plaintiff below offered also the testimony of Mr. Abraham Straus who stated that he has been a United States examiner at the port of New York for about 20 years and that he had examined watch hands; that he passed the importation in this case and retained samples thereof which were offered in evidence and marked exhibit 4.

He stated further that the watch hands in exhibit 4 are the ones described on the invoice as 509 C. With respect to the samples attached to exhibit 3, he testified as follows:

Q. Now Mr. Straus, I·show you the watch hands attached as an Exhibit to· the Government Collective Exhibit 3, and ask you if they are the same watch. hands as those which you have just produced having been taken by you out of this importation, Collective Exhibit 4?—A. Yes, these are from this shipment, from the sample, from the original sample. These are part of the original sample.

Q. Do you recognize them as the same hands you gave Government Counsel as having come from this importation?—A. Yes, they are the same hands.

Q. Mr. Straus, after you had advisorily returned the value on these, did you recommend an appeal be taken by the collector?—A. Oh yes, yes, I recommended it.

The trial judge, after reviewing the evidence, reached the following conclusion:

Without further discussing the evidence offered by counsel for the plaintiff, suffice it here to say that such evidence falls far short of establishing the market value or price at or about the date of exportation of the instant merchandise to the United States, at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, either for home consumption or for exportation to the United States, plus all costs, charges, and expenses specified in section 402 (c) and (d) of the act of 1930.

The burden resting upon counsel for the plaintiff in a reappraisement case has been so clearly and so often stated both by this court and the appellate court that reiteration or citation here is not necessary.

Counsel for the plaintiff not having introduced sufficient evidence to overcome the presumptively correct values found by the appraiser, the appraised value is hereby affirmed. Judgment will be rendered accordingly.

The appellant makes the following contention in its brief:

The government contends that the presumption of correctness attaching to the appraised value,—a rebuttable presumption,—is destroyed by the uncontradicted evidence in the record that the watch hands actually imported in this shipment were not item 509c, as invoiced and appraised, but were in fact a more valuable item, i. e. No. 524 hands.

The government further claims that the written statement by the Swiss Watch Chamber of Commerce (coll. ex. No. 3), as to the identity, and price in Switzerland, of the watch hands actually shipped, together with the fact that the freely offered export list price (Subexhibit A to collective exhibit 1) shows the same price, establishes *prima facie* the export value thereof, which value, being higher than the foreign value, the trial court should have found to be the dutiable value herein. That value is Swiss francs 10.50 per gross, plus 10%, plus Swiss francs 2.00 per gross for special gauges, less 5% cash discount, plus packing (invoiced cost of printing cards, Swiss francs 7.50).

We have reviewed the evidence in detail and fail to find statements therein showing the usual wholesale quantity in which watch hands, No. 524, were sold in the markets of Switzerland, either for home consumption or for export and we find that no evidence was produced tending to show the principal market in Switzerland for such products or that offers or sales of the goods were made either for home consumption or for export at or near the time of exportation.

It has been repeatedly held by this court and by the appellate court that the burden is on the appellant to establish before the trial court all elements necessary for a valid appraisement, before the court can appraise merchandise. In *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324, the court said:

> Accordingly, it is incumbent upon the party who perfected the appeal to meet every material issue involved in the case. If he fails to do so, his appeal is subject to dismissal by the trial court, in which event the appraised value would be in full force and effect. *United States* v. *F. B. Vandegrift & Co. et al.*, 16 Ct. Cust. Appls. 278 [398], T. D. 43120.

In *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057, the court said:

> It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the non-existence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case."

In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, 170, T. D. 45276, the court said:

> Nowhere in the testimony of either witness are we able to find any statement to show that the entered value was, at the time of the exportation of the merchandise from Belgium to this country, the price at which Proost & Co., or anyone else, was freely offering such or similar merchandise for sale to all purchasers in the principal markets of Belgium, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.
>
> That is substantially what the statute says in defining the export value which must be taken for tariff purposes. It is a very plain and unambiguous statute, and we are at a loss to understand why in so many of these reappraisement cases, which reach this court, the party originally appealing to reappraisement, upon whom it is incumbent to make the proof which will meet the statutory requirement, not only fails to make it but, seemingly, fails to try to make it.

The cases above cited cover merchandise which was imported under the Tariff Act of 1922 in which act there was no statutory provision making the appraiser's finding presumptively correct such as we find in section 501 of the Tariff Act of 1930 herein involved, reading as follows:

> The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

We are of opinion that the requirements of proof under the above provision are not less exacting than they were under the Tariff Act of 1922. Many cases have been decided under the act of 1930 and the rule is well established that the party perfecting the appeal must establish all necessary elements of proof required to find value. In

the case of *United States* v. *H. W. Robinson & Co.*, 69 Treas. Dec. 1427, 1430, Reap. Dec. 3817, the court said:

The *Meadows, Wye & Co.* case arose under the act of 1922, at which time no presumption of correctness attached to the appraiser's finding of value. In the instant case, which arose under the act of 1930, there is such a presumption. We think the above requirements as to proof are equally applicable to the Government in a case in which it is the appellant, as they are to the importer when he is the appellant.

In *United States* v. *Spiritos Music School*, 2 Cust. Ct. 801, 802, Reap. Dec. 4490, the court said:

In our judgment, the lower court committed error in giving any probative value to the proof introduced on behalf of the importer. It utterly fails to establish the elements necessary to prove value in this court. There is no competent evidence of the existence of a foreign value or an export value for such or similar merchandise, or if both exist, which is higher. No competent proof was submitted to show the usual wholesale quantities in which such or similar merchandise was bought and sold in the ordinary course of trade at the times of exportation of the instant merchandise. No evidence of probative value was offered to show the principal markets of the country of exportation for such or similar merchandise.

In *United States* v. *Arkell Safety Bag Co.*, 2 Cust. Ct. 827, 833, Reap. Dec. 4513, the court said:

One of the elements of dutiable value is the usual wholesale quantity. The presumption which attaches to the appraiser's action cannot avail in the matter of the usual wholesale quantity in this case because the appraiser found a foreign-market value for the merchandise. The usual wholesale quantity in the foreign market for home consumption might or might not be the usual wholesale quantity for export to the United States. Not having established the usual wholesale quantity, which is a necessary element in export value, the importer has failed to sustain the burden of proof and therefore cannot prevail.

\*        \*        \*        \*        \*        \*        \*

Insofar as the decision below attempts to find what the export value of the imported paper is, it is reversed on the ground that the proof of all the elements necessary for a legal appraisement are not present, in that the record fails to show the usual wholesale quantity for export to the United States. That element being absent, this division is unable to find the values of the paper involved.

The cause is therefore remanded to the single judge with instructions to dismiss the appeals for failure of proof.

The appellant claims that the presumption of correctness of the appraiser's action is a rebuttable presumption and that such a presumption is always overcome by producing facts showing the incorrectness of the finding which is presumed to be correct, citing *Lincoln* v. *French*, 105 U. S. 614. We agree with appellant's argument that the presumption of correctness of the appraiser's action may be overcome by evidence. In reappraisement cases, however, the court is required by the statute to appraise goods and the authorities above cited hold that the court is unable to make an appraisement if all of the essential elements required by the statute for appraisement are not established.

. In its claim that the appraised value is incorrect the appellant relies upon a statement in a letter forwarded to the supervising Treasury attaché and by him forwarded to the Commissioner of Customs, introduced in evidence as collective exhibit 3 to which are attached certain samples which Examiner Straus testified are the same as the samples in exhibit 4 which he retained from the shipment. The statement in the letter reads as follows:

A technical examination of the watch hands referred to us has shown that the watch hands fall within the following category: Kind "Indes", quality B., tempered rounded, polished heads; they must be delivered at the minimum under No. 524 at the rate of Frs. 10.50 plus general increase of 10%. Besides, if these hands are required with exact gauges, as it would seem to appear from the card to which the samples are attached, which bear the words "gauged holes," there should be added an increase of Frs. 2.00 per gross for special gauges.

The translation in the exhibit shows that the signature is illegible and there is nothing in the record showing the qualifications of the writer of the letter. Furthermore, there is nothing in the statement quoted showing that such merchandise was freely offered for sale at the price stated at the time of the instant shipment in the principal market in Switzerland in the ordinary course of trade either for home consumption or for export, and furthermore, the usual wholesale quantity in which sales or offers were made is not shown. That exhibit does not establish the facts claimed by the appellant.

The appellant argues also that subexhibit A of exhibit 1 is a price list and that it is sufficient to establish value. We have examined the exhibit and find that it is written in a foreign language; therefore the court cannot give it much weight. In *United States* v. *John Henschel & Co.*, Reap., Dec. 5142, a price list in the German language was attached to one of the exhibits. The court said:

The report, collective exhibit 3, calls attention to an appended price catalog marked as exhibit A. This price list is in the German language and no translation having been furnished of any part of the same the court will not give it any consideration.

The appellant claims also in its brief that the court can determine by an inspection of the samples in evidence that the importation did not consist of watch hands of quality 509c, as invoiced. The appellant states:

However, the government agent obtained a physical sample of Swiss watch hands No. 509 C, described on the invoice herein, and forwarded same enclosed in an envelope marked exhibit "C" and attached to his report. He also enclosed in the same envelope a physical sample of the aforementioned "similar" hand, No. 112, sold in the home market (pp. 5 and 7, coll. ex. 1).

A comparison of those samples with the sample watch hands taken from the instant importation by the customs examiner (Exhibit No. 4) establishes beyond doubt that the articles here under reappraisement are *not 509 C*, as invoiced and appraised. A glance at the two sets of samples will readily disclose that the

official samples of imported hands (Exhibit No. 4) are more than twice the size of the 509 C hands attached as subexhibit "C" to Exhibit No. 1.

We have examined the samples mentioned and have compared the two exhibits as far as our inexpert knowledge will permit and find that we cannot agree with appellant's conclusion above stated. The samples of the watch hands in exhibit 4 are larger than those in subexhibit C of exhibit 1, but the shape and color of those in subexhibit C of exhibit 1 are the same as the hour hands in exhibit 4. We note also that on subexhibit B of exhibit 1, which is a chart showing different qualities of watch hands, there are a number of different sizes of hands under one quality number and we conclude that size alone is not enough to show that the imported hands are not quality 509 C. The Treasury representative evidently obtained the samples in subexhibit C of exhibit 1 from the shipper who might have given him some samples of second hands or other small watch hands of the same quality number as the hour and minute hands retained by the examiner. In exhibit 1, in describing the quantity discount list, the Treasury representative said:

For a series of a same number, of a same type, of a same color or of a same assortment, in assorted sizes there are granted the following quantity discounts * * *.

We are of opinion that the fact that the customs agent refers to watch hands of the same number *"in assorted sizes"* indicates that the articles are sold in assorted sizes under the same number. Therefore the difference in size of the hands in subexhibit C of exhibit 1 and those in exhibit 4 is of no moment and does not indicate that the merchandise in the shipment was not the watch hands described on the invoice.

The appellant argues also that even if the unit invoice price is adopted by the court, the importer is not entitled to a discount of 25 per centum therefrom because it is shown that offers or sales are made at different discounts depending on the status of the purchaser. That argument is of no value here in view of the fact that the appellant did not establish the usual wholesale quantity in which the merchandise was offered for sale. For all that appears in the record, it may be that in the usual wholesale quantity the watch hands were offered for sale only at the unit invoice prices less 25 per centum discount. At any rate, there is a presumption that such was the case due to the statutory presumption of correctness attaching to the appraiser's action.

The appellant admits in its brief that the merchandise should not be appraised on the basis of foreign value of similar goods because the foreign value is lower than the export value of the goods herein involved. The Treasury representative's report, exhibit 1, shows also that the use of the watch hands sold in Switzerland is restricted,

that is, they are not subject to resale and are sold only to manufacturers of watches. Under such circumstances there is no statutory foreign value.

We have discussed at length the different points set forth in appellant's brief, some of which are not pertinent to the decision of the case inasmuch as the plaintiff below failed to make out a case by introducing evidence establishing all of the essential elements necessary to enable the court to make a valid appraisement. In such case the appeal below might well have been dismissed but we agree with the finding of the trial judge to the effect that the appellant failed to introduce sufficient evidence to overcome the presumptively correct values found by the appraiser. The judgment below is affirmed.